Bevis, J.
 

 The plaintiff contended that the defendant was negligent, basing his contention upon the facts pleaded and proved, and upon the violation of an ordinance of the City of Akron which prohibited turning in the street unless the turn could be made without backing. The plaintiff claimed that Sections 6310-26 and 6310-27, General Code, relating to stopping on a highway, were also violated.
 

 The defendant contended that the plaintiff was guilty of contributory negligence. This contention was denied by the plaintiff, who claimed, moreover, that the defense of contributory negligence was not available to the defendant because the conduct of its servant was wilful or wanton in character.
 

 
 *523
 
 The plaintiff in error urges in this court five assignments of error:
 

 1. In overruling the defendant’s motion for judgment
 
 non obstcmte
 
 upon the findings of fact returned by the jury.
 

 2. In overruling the defendant’s motion for a directed verdict at the close of the plaintiff’s evidence.
 

 3'. In admitting in evidence part of an insurance policy covering the truck in question.
 

 4. In charging the jury on the subject of “wilful and, or, wanton negligence”, there being, as it claims, no evidence in the record to support such a charge.
 

 5. In failing correctly to state the law as to wilful and wanton misconduct.
 

 1. We shall notice the first assignment only to say that it presents no sufficient ground for reversal. The interrogatories refused were too indefinte in character for proper submission to the jury. The answers to those submitted do not, in our judgment, establish contributory negligence so clearly as to override the verdict of the jury to the contrary.
 

 2. Neither do we think the trial court erred in overruling the defendant’s motion for a directed verdict at the conclusion of the plaintiff’s evidence. The plaintiff testified that he “might have” been going thirty miles an hour before he “got up to where this truck was” and twenty-five miles at the time of the collision. He also testified that he did not know how far ahead his lights would disclose a large object, and did not know whether he could see it farther than ten feet. Section 12603, General Code, makes it “prima facie unlawful” to exceed twenty miles an hour in the closely built-up parts of a city, and makes it unlawful to drive a motor vehicle upon any public road at a “greater speed than will permit him [the driver] to bring it to a stop within the assured clear distance ahead.” The extent of the assured clear distance ahead was not definitely fixed in the evidence, nor was
 
 *524
 
 it established that the plaintiff could not stop within it. Even if the plaintiff were traveling at thirty miles an hour before he got to the truck it is not clear that such violation of the statute was the proximate cause of the injury. If, as the plaintiff’s evidence tended to prove, the unlighted end gate, with which only the car collided, were invisible to the plaintiff as he approached it, a speed of twenty miles per hour might well have resulted in consequences almost equally serious. The jury, answering an interrogatory, found that the plaintiff was traveling at a rate of twenty-five miles per hour “as it [he] approached and at the time it [he] struck the motor truck.” It also found that the plaintiff’s car could have been stopped within ten feet “under the conditions then and there existing just prior to the time of the collision.” It likewise found that the lamps on the plaintiff’s car would cast light ahead under the existing conditions for twenty-five feet. These findings tend at least to corroborate the soundness of the trial court’s judgment and to show that no substantial injustice was done by his refusal to direct the verdict.
 

 3. Before the Great Atlantic and Pacific Tea Company was dismissed from the case, and during the cross-examination of William Leek, president of the Reserve Trucking Company, Leek was interrogated as to the use of the trucks:
 

 “Q. And those trucks are used exclusively in A. and P. business, aren’t they? A. No, sir.
 

 “Q. Isn’t that a fact, that they are used exclusively * * *? A. No, sir.
 

 “Q. Isn’t it a fact that you carry insurance on these trucks on the basis that they are used exclusively in the business?” Objection. * * *
 

 “Q. Don’t your insurance policy .provide that the truck insured shall be used exclusively in the business of the A. and P.?”
 

 Thereafter, over the objection of the plaintiff in
 
 *525
 
 error the court permitted the following “rider” covering the truck in question to be read to the jury:
 

 “In consideration of the premium charged for the policy to which this endorsement is attached, it is hereby understood and agreed that:
 

 “1. The Great Atlantic and Pacific Tea Company is an additional named assured in said policy.
 

 “2. The commercial vehicles covered by the said policy will be used exclusively in the services of The Great Atlantic and Pacific Tea Company. Such commercial vehicles will be used for commercial purposes usual to the business of the assured, and their operation to such extent will be in the territory known in the company’s manual as ‘Remainder of state’.”
 

 This, it is contended, was reversible error. We are unable to agree with this contention. Both the Reserve Trucking Company and the Great Atlantic and Pacific Tea Company were still parties to the case. No motion to elect had yet been made. Each had filed a separate answer; that of the Great Atlantic and Pacific Tea Company denying both ownership of the truck and agency of the driver, and that of the Reserve Trucking Company admitting ownership of the truck, but denying agency of the driver. The court, in admitting the rider in evidence, cautioned the jury that “the sole purpose of this evidence is to throw light on whose truck it was and who exercised control over the operation of the truck.”
 

 After the Great Atlantic and Pacific Tea Company had been dismissed from the case, and the election had been made to proceed against the Reserve Trucking Company alone, the court instructed the jury as follows:
 

 “Now, ladies and gentlemen of the jury, the plaintiff has rested in this case, and the defense is about to put on its evidence, and you are instructed that this case originally started with Richard Fairchild as plaintiff, and there were two defendants, The Great
 
 *526
 
 Atlantic and Pacific Tea Company and The Reserve Trucking Company. You are instructed that now the case is proceeding against The Reserve Trucking Company, and The Great Atlantic and Pacific Tea Company is not a party defendant.
 

 “Therefore this case will proceed now against The Reserve Trucldng Company only. Now there was some evidence admitted over the objection of The Reserve Trucking Company, on the subject of an insurance policy. You will remember the instruction that I gave you at that time, that that evidence was admitted. Inasmuch as the case is now proceeding against The Reserve Trucking Company only, you are instructed to disregard entirely and absolutely all evidence on the subject of an insurance policy. You will not consider it for any purpose. You will not consider it at all. You may proceed.”
 

 ■ Considering this point the Court of Appeals in its opinion said:
 

 “As bearing upon the question of ownership of said truck and upon the question of joint enterprise, and for the purpose of impeaching the testimony of the witness Leek, the introduction and receipt into evidence of said rider, at the time of its admission, was entirely proper, relevant and competent.
 
 Goz
 
 v.
 
 Tenney,
 
 104 Ohio St., 500 [136 N. E., 215];
 
 Paepke
 
 v.
 
 Stadelman,
 
 (Mo.) [222 Mo. App., 346], 300 S. W., 845. “In the latter case the court said:
 

 “ ‘1. Defendant’s ownership of the car, which, when driven by another, collided with plaintiff’s car on a street, is an element of plaintiff’s case, and, being •denied by the answer, any evidence tending to show it, as that he carried indemnity insurance thereon, is admissible in proof thereof.
 
 * * *
 

 “
 
 ‘5.
 
 If evidence that defendant carried liability insurance is relevant and material, plaintiff cannot be convicted of bad faith in offering it, so as to make his injection thereof into the trial error.’
 

 
 *527
 
 “When, by reason of plaintiff’s election, the evidence in question was no longer competent, it was withdrawn from the consideration of the jury by the court under entirely appropriate instructions.
 

 “ ‘The failure to formally withdraw evidence which was competent when admitted, but which has become incompetent by reason of a change in the case, is not prejudicial when the jury are. instructed to. disregard it.’ 2 O. J., ‘Appeal and Error’, Sec. 720, ‘Withdrawal and Striking Out.’
 

 “We hold that the admission of the evidence concerning the insurance rider was proper, when it was admitted, and for the purposes for which it was admitted, and when a change in the case occurred, and that evidence was no longer competent, its withdrawal from the consideration of the jury under the instructions of the court, as given, did not constitute prejudicial error.”
 

 In this holding we concur.
 

 4. The trial judge in his charge, after referring to the fact that the petition alleged “wanton, wilful and gross negligence and misconduct which proximately caused the plaintiff’s injuries”, and after defining the law upon negligence and contributory negligence, told the jury that a finding of contributory negligence on the part of the plaintiff would require a verdict for the defendant “unless you should find, under instructions which I will give you hereinafter, by a preponderance of the evidence that the defendant company, acting through its duly authorized agent, was guilty of wanton and, or, wilful negligence. and misconduct' proximately causing the accident and resulting injury, in which event the defense interposed by the defendant, contributory negligence, does not apply. ’ ’
 

 Then later in the charge the court said:.
 

 “I have given you the rules of law applicable to cases of negligence which do not include or comprehend wilful or wanton negligence. In the determina
 
 *528
 
 tion of this case you are called upon to determine whether or not this defendant company, acting through its agent and servant, was guilty of wilful and, or, wanton negligence, as well as ordinary negligence, so I say to you that if you find by a preponderance of the evidence that the defendant company,' acting through its agent and servant, was guilty of an intentional act of negligence, or that the act or omission was committed under such circumstances as evinced a reckless disregard of the safety of others, as by failure, after discovering the danger, if you find there was a danger, to exercise ordinary care to prevent impending injury, then you may consider those acts in determining whether or not the defendant company was guilty of wanton and, or, wilful conduct.
 

 “In order that one may be held guilty of wilful and, or, wanton conduct it must be shown that he was conscious of his conduct and conscious from his knowledge of existing conditions that injury would likely or probably result from his conduct, and that, with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious results.
 

 “In order to establish wantonness it is not necessary to show an entire want of care. Violation of a statute or ordinance does not of itself constitute a wilful wrong, and a wilful injury will not be inferred when the result may reasonably be attributed to negligence or inattention. A person might .be guilty of the grossest negligence and his acts might be fraught with the direst consequences without having those elements or the intent and purpose necessary to constitute a wilful tort. A wilful tort can only be predicated upon knowledge of danger with a reckless disregard of the consequences after discovering the danger.
 

 “It is, of course, not necessary that the defendant should have knowledge of the peril of any particular person or that he intended to do injury to some par
 
 *529
 
 ticular person. On the other hand, any general knowledge or information that other persons are placed in a position of peril by his reckless and heedless conduct would amount to a legal wilful tort. This doctrine is based upon the well known principle that a person is presumed to intend the natural and logical consequences of his acts.
 

 “Wilful or want on negligence, whereby liability is incurred irrespective of contributory negligence, may be defined as a reckless disregard of the safety of the person or property of another by failing, after discovering the peril, to exercise ordinary care to prevent impending danger. •
 

 “You are specifically instructed, when you consider the charge of wanton and, or, wilful negligence, if you find the facts in this case warrant a consideration of this law, that before you can find that the defendant was guilty of wanton and, or, wilful negligence you must find by a preponderance of the evidence that there have been proved the elements of intent or purpose to do injury to the plaintiff after knowledge of his dangerous situation, or such entire absence of care for his safety after knowledge of his dangerous situation, as would exhibit indifference to consequences.
 

 “So, ladies and gentlemen of the jury,.if you find by a preponderance of the evidence that the plaintiff has proved wanton and, or, wilful conduct on the part of this defendant, as I have defined that to you, and as charged in the plaintiff’s petition, and if you find by a preponderance of the evidence that such wanton and, or, wilful conduct on the part of the defendant company was the proximate cause of the collision and resulting injuries to the plaintiff, then your verdict will be returned for the plaintiff, and the defense of contributory negligence, which I have mentioned heretofore in this charge, will not be considered by you as it is no defense against wanton or wilful conduct.”
 

 It is the contention of the defendant that there is
 
 *530
 
 no evidence in the case upon -which a finding of any wilful or wanton misconduct could properly be based, and that any charge upon the subject was accordingly reversible error.
 

 It has already been noted that the plaintiff’s petition pleaded “wanton, wilful and gross negligence and misconduct.”
 

 There was evidence in the case from which simple negligence on the part of the defendant might be inferred, and, while, as stated above, the evidence did not warrant the court in so finding as a matter of law, there was at least some evidence of contributory negligence.
 

 It is conceded that contributory negligence is no defense to a charge of wilful misconduct;
 
 Tucker
 
 v.
 
 State,
 
 89 Md., 471, 43 A., 778, 46 L. R. A., 181;
 
 Morgan Bros.
 
 v.
 
 Mo., K. & T. Ry. Co. of Texas,
 
 108 Tex., 331, 193 S. W., 134;
 
 Rost
 
 v.
 
 Noble & Co.,
 
 316 Ill., 357, 147 N. E., 258; and by the weight of authority it is no defense to a charge of wanton negligence. 29 Ohio Jurisprudence, 525; 3 Cooley on Torts (4th Ed.), 402;
 
 Wabash Rd. Co.
 
 v.
 
 Speer,
 
 156 Ill., 244, 40 N. E., 835;
 
 Suell
 
 v.
 
 Derricott,
 
 161 Ala., 259, 49 So., 895, 23 L. R. A. (N. S.), 996;
 
 Fry
 
 v.
 
 Southern Public Utilities Co.,
 
 183 N. C., 281, 111 S. E., 354.
 

 A charge upon wilful or wanton misconduct was, therefore, pertinent if there was any evidence from which such misconduct could properly be inferred.
 

 This court has rather clearly distinguished between “wilful tort” and “wanton negligence.” In
 
 Payne, Dir. Genl. of Rds.,
 
 v.
 
 Vance,
 
 103 Ohio St., 59, 133 N. E., 85, the first paragraph of the syllabus reads: ■
 

 “Wilful tort involves the element of intent or purpose and is therefore distinguished from negligence whatever may be its grade, whether slight, ordinary or gross.’.’
 

 In the opinion, at page 68, Marshall, O. J., says: “Wilfulness implies design, set purpose, intention,
 
 *531
 
 deliberation. Strictly speaking, wilful negligence is not negligence at all. Wherever an exercise of the will is exerted there must be an end of inadvertence, * # #
 

 In
 
 Higbee Co.
 
 v.
 
 Jackson,
 
 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131, paragraph 3 of the syllabus reads: ‘ ‘ To constitute wanton negligence it is not necessary that there should be ill-will toward the person injured, but an entire absence of care for the safety of others, which exhibits indifference to consequences, establishes legal wantonness. Such a mental attitude distinguishes wrongs caused by wanton negligence from torts arising from mere negligence. ’ ’
 

 In our opinion this syllabus correctly states the law.
 

 It has been urged in argument that the term wanton negligence is ambiguous; that negligence is the failure to comply with an external standard — the care that would be exercised by an ordinarily prudent person under the, same or similar circumstances — while wantonness, as shown by the syllabus in the
 
 Higbee
 
 case,
 
 supra,
 
 is a state of mind. Abstractly, this is true. Practically, however, we see no insuperable objection to the continued use of a term which has become so deeply imbedded in legal terminology, provided it be properly defined. One is guilty of wanton negligence who fails to exercise any care for the safety of those to whom a duty of care is owing when he has actual knowledge of impending harm which such care might avert. Such reckless indifference to consequences makes his negligence wanton.
 

 While the legal effect of wilful misconduct and of wanton misconduct may, in many respects, be equivalent, it can only conduce to confusion and unsound reasoning to speak of them as though they were interchangeable terms. Wilful misconduct, as has been said, implies the element of intent or purpose to injure. Wanton negligence, on the other hand, implies the failure to exercise any care toward those to whom
 
 *532
 
 a duty of care is owing when the probability that harm will result from such failure is great and such probability is actually known to the defendant.
 

 We can see in this record no evidence of wilful tort. However negligent the conduct of the defendant’s servant may have been, there is nothing to indicate the intent or the purpose to injure anybody. G-orsek’s intent and purpose were to turn the truck around in the street, and there is evidence that he was negligent in carrying out his purpose. But we have found no fact in the record, and none has been pointed out in the argument, from which an intent or purpose to harm anyone can be inferred.
 

 Was there evidence to support a charge of wanton negligence? When the charge was given, testimony tending to establish the following facts could have been marshalled: The night was dark and rainy; the air was filled with mist which obscured the vision and reduced greatly the range of illumination by headlights; the street was wet and slippery; the truck was being turned in violation of an ordinance, and was, at least temporarily, standing crosswise of a busy street without lights other than the headlights and the tail light; the end gate was partly down and extended beyond the rest of the truck far enough to cause the damage complained of, no other part of the truck having been touched by the plaintiff’s car; G-orsek had placed the end gate in this position in order to have better vision to the rear; it had no light upon it, and, hanging “end wise” to the plaintiff as he approached, was less easily visible than the remainder of the truck; there was no watchman or light or other warning to those approaching from the south.
 

 All of these facts were known to G-orsek at and prior to the time of the, collision. They present the following questions:
 

 (a) Was there great probability of harm to persons in the plaintiff’s situation at the time?
 

 
 *533
 
 (b) Did Gorsek actually know of this probability?
 

 (c) Was there a duty owing by Gorsek to such persons to use care to prevent such harm?
 

 (d) Was such duty fulfilled?
 

 The answer to the first of these questions depends in some measure upon the exact position of the truck as it stood crosswise in the street. Had it stood several feet away from the west curb,, so as to leave; but eight or ten feet for the passage of north bound vehicles on the right or east side of the street, the probability of harm to such vehicles would have been far greater than if it stood with its front wheels to the west curb and left half of the street open' for north-bound traffic. There was testimony in the case that it stood away from the west curb, and that there was but a narrow passage left on the east side of the street. This testimony the trial judge was bound to consider in determining whether or not to charge on wanton negligence.
 

 That Gorsek actually knew of the great probability of harm to vehicles from the position his truck occupied in the street is indicated by his own testimony that he had his brother stand guard on the north side of the truck to warn those coming from that direction. Of course, if half of the street were left open on the east side for north bound cars, the danger to such north bound cars would be less than that to south bound cars. If less than half of the street were so left open, the danger to south bound cars would accordingly be increased. In any event, the fact that he took precaution to place his brother on watch leaves little doubt that, as an experienced driver, he knew of the great probability of harm. If he had knowledge of such probability of harm, there was clearly a. duty to use care to avert it if he could; and it was a question for the jury whether or not he fulfilled that duty of care.
 

 We are, therefore, constrained to hold that there
 
 *534
 
 was at least some evidence of wanton negligence, and that it was not error for the court to give a proper charge upon the subject.
 

 5. While the evidence before the court warranted a charge upon, the subject of wanton negligence, there was error in the charge as it was given to the jury. In one place the court says: “If you find * that the defendant * * was guilty of an intentional act of negligence * * * then you may”, etc.
 

 As already pointed out above “intentional negligence” is a phrase that contradicts itself.
 

 Again in the part of the charge devoted to this subject the court speaks repeatedly of “wilful and, or, wanton negligence”. Not only is the term “wilful negligence” contradictory and confusing, but the formula, “wilful and, or, wanton”, is lacking in the clarity which should mark the court’s exposition to the jury.of a legal concept.
 

 The court probably meant to say to the jury that they were to disregard the defense of contributory negligence if they found, by a preponderance of the evidence, that the defendant’s servant was guilty of negligence that was both wilful and wanton, or of negligence that was wilful only, or, of negligence that was wanton only. But in view of the fact that the words “wilful and, or, wanton”, in this sequence, are both ungrammatical and illogical, we can not be certain that the jury derived this meaning from them.
 

 In still another place the court says:
 

 “Wilful or wanton negligence * * may be defined as a reckless disregard of the safety of the persons or property of another by failing, after discovering the peril, to exercise ordinary care to prevent impending danger.”
 

 In this passage not only is the concept of wilful negligence repeated, but wilful and wanton misconduct are defined in the same terms. We think this was error.
 

 
 *535
 
 The most serious error in the charge, however,' lies in this sentence:
 

 “In order to establish wantonness it is not necessary to show an entire want of care. ’ ’
 

 This is directly contradictory to the third paragraph of the syllabus in
 
 Higbee Co.
 
 v.
 
 Jackson, supra,
 
 and, in our opinion, takes away from the idea of wantonness its essential element.
 

 For these errors in the charge, the judgment of the Court of Appeals must be reversed and the cause remanded for further proceedings in accordance with this opinion.
 

 Judgment reversed and cause remanded.
 

 Weygandt, C. J., Stephenson, Jones, Matthias and Zimmerman, JJ., concur.
 

 Wilkin, J., not participating.