TIGHE, A MINOR, APPELLEE, *v.* DIAMOND ET AL., APPELLANTS.

(No. 203—Decided June 27, 1947.)

*Messrs. Brouse, McDowell, May & Bierce,* for appellee.

*Messrs. Buckingham, Doolittle & Burroughs,* for appellants.

STEVENS, J. The petition herein, filed in the Court of Common Pleas of Medina county, alleged:

That plaintiff, an infant, on October 28, 1945, was riding as a guest in an automobile owned by Samuel J. Diamond and driven by defendant Earl Lewis Dia-

mond, a minor. That the defendant Samuel J. Diamond, in order to procure a motor vehicle operator's license for Earl L. Diamond, had theretofore engaged, under Section 6296-10, General Code, in a written undertaking of responsibility as provided in said section. That while said Earl L. Diamond was operating said automobile with plaintiff therein as a guest, he turned onto Durling Drive in the city of Wadsworth, Ohio, and proceeded to drive thereon. That there existed on Durling Drive a sharp and dangerous rise in the surface thereof, which was formed by an abandoned railroad bed, running approximately at right angles to and across Durling Drive. That defendant Earl L. Diamond drove the automobile on Durling Drive for the express and intentional purpose of passing over and encountering said rise, and of passing over said rise, in such manner and at such a rate of speed as to thrill, jolt and frighten this plaintiff. That said defendant knowingly, intentionally and wilfully encountered the said rise in said highway, at a speed of 50 to 60 miles an hour, well knowing and appreciating that to do so would endanger, and in all probability injure, the plaintiff herein. That he did so with total indifference to and disregard of the danger created by his speed in encountering the said rise, and with total indifference to and disregard of the safety of plaintiff. That he encountered the said rise in the said highway at such a rate of speed as threw plaintiff against the top of the car with great force and violence. That the said automobile left the traveled portion of said highway, overturned, and, after rolling over several times, struck a tree at the side of the highway, where it came to an abrupt stop.

That as a direct and proximate result of the negligence and wilful and unlawful misconduct of defendant Earl L. Diamond, plaintiff was seriously injured,

and she prayed a joint judgment against the two defendants for $25,000.

The defendants filed answers, wherein, after certain admissions, they denied "that defendant Earl L. Diamond knowingly, intentionally and wilfully operated said automobile so as to endanger the plaintiff, and with total indifference and disregard to the safety of the plaintiff," and generally denied every other allegation of the petition not admitted.

Trial to a jury resulted in a plaintiff's verdict for $9,500 against both defendants, upon which judgment was entered. This appeal on questions of law followed.

Four assignments of error are presented, as follows:

1. The trial court failed, upon motion of appellants, to direct a verdict in their favor.

2. The trial court refused to charge the jury before argument in accordance with written requests of appellants.

3. The trial court erred in its general charge to the jury.

4. The trial court erred in failing to declare a mistrial at the request of the appellants, after appellee offered evidence with respect to the interest of an insurance company.

The facts as disclosed by the record are:

Durling Drive runs to the south from U. S. 224 near the easterly corporate limits of the village of Wadsworth, and is an unimproved road, upon the surface of which were indented wheel tracks. The sides of the street are surfaced with loose material.

At approximately right angles the track of the trolley line had crossed Durling Drive, at a level substantially above the surface of the street.

When the car tracks were removed, the track bed was not graded down to the street level, and a bump or raised place in the street was permitted to remain.

The defendant Earl L. Diamond had several times previously driven over this bump, and he had also ridden over it in cars driven by others.

On the Sunday evening in question, young Diamond, driving his father's car, was riding around Wadsworth, when he noticed the plaintiff and a girl friend on the street in the downtown portion of the village. The plaintiff was a high school classmate and close neighbor of Diamond, Jr. Diamond stopped the car and asked the girls if they would like to ride, and, upon their acceptance of his invitation, the girls entered the car, and they proceeded to ride around the village for a half hour. They came to and turned onto Durling Drive, and Diamond, with the expressed intention of giving the girls a thrill, proceeded to cross said bump at a speed of approximately 50 miles an hour. After crossing the bump and throwing his passengers against the top of the car, the auto proceeded some 260 feet southerly with its wheels out of the wheel tracks, when, in turning to the left to get back into the wheel tracks, it got out of control, went off the road, turned over, and came to rest close to a tree.

In the course of events hereinbefore outlined, plaintiff sustained serious injuries.

Appellants' first assignment of error is that, in overruling defendants' (appellants') motion to direct a verdict, the trial court erred; and that it erred as a matter of law in submitting the case to the jury upon any theory of liability.

Antecedent to a consideration of the questions presented by the above assignment of error is the question of the effect of the enactment of Section 6296-10, General Code, upon the provisions of the "guest act" (Section 6308-6, General Code).

The "guest act," Section 6308-6, General Code, provides:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

This section became operative June 15, 1933.

The "minor drivers' license" section, Section 6296-10, General Code, as amended effective May 25, 1943, provides:

"(a) The registrar shall not grant the application of any minor under 18 years of age for an operator's or chauffeur's license unless such application is signed by either parent, guardian or other person having custody of the applicant, or in the event there is no parent or guardian then by a responsible person who is willing to assume the obligation imposed under this act.

"(b) Any negligence or willful misconduct of a minor under 18 years of age when driving a motor vehicle upon a highway shall be imputed to the person who has signed the application of such minor, which person shall be jointly and severally liable with such minor for any damages caused by such negligence or wilful misconduct except as otherwise provided in the next succeeding paragraph. * * *."

The original section became effective on October 1, 1936.

Neither the originally-enacted minor drivers' license law, nor either of its two later amendments, in terms repeals any portion of the guest act; and, repeals by implication not being looked upon favorably

by courts, it is the duty of this court to so construe the two sections as to make both effective, if that can be reasonably done.

The rule is well established that "a subsequent statute, treating a subject in general terms, and not expressly contradicting the provisions of a prior act, shall not be considered as intended to affect more particular and positive provisions of the prior act, unless it be absolutely necessary to do so in order to give its words any meaning." *State, ex rel. Fosdick,* v. *Mayor,* 14 Ohio St., 472.

It is possible to so construe the wording of both statutes as to give effect to the entire contents of each. Such a construction would limit a guest, under Section 6296-10, General Code, to a recovery against the person signing the minor's application, because of the wilful misconduct of the minor, and would eliminate said person's liability to a guest of the minor because of the minor's negligence, or wanton misconduct.

We are of the opinion that the two statutes are *in pari materia,* and that, construed as above indicated, the entire contents of both are operative and valid.

The appellants' claim of a right to a directed verdict in their favor is based upon the assertion that there was no evidence of "wilful misconduct" of defendant Earl L. Diamond which warranted submission of that question to the jury.

It therefore becomes necessary to ascertain what is meant by the term "wilful misconduct," as that term is used in Sections 6308-6 and 6296-10, General Code.

Webster's International Dictionary, Second Edition, defines "willful" or "wilful" as: "2. Self-determined; voluntary; intentional"; and "misconduct" as: "2. Wrong or improper conduct; bad behavior; unlawful behavior or conduct; specif., malfeasance * * *."

Hence, "wilful misconduct" is voluntary and intentional improper conduct or behavior.

Although there has been much confusion of terms in the use of the expressions "wilful misconduct," "wanton misconduct," "wilful tort" and "wilful injury," it seems to the writer of this opinion that "wilful misconduct" may be of two kinds: actual or intentional "wilful misconduct," where the intent is to injure, of which a battery would be an example; and constructive "wilful misconduct," where the act causing the injury is intentional, but there is no voluntary intent to injure; in this type of "wilful misconduct" the perpetration of the wrongful intentional act must be accompanied by indifference to the safety of others after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury to such others. The presence of these latter elements, coupled with the intentional act, furnishes the constructive intent to injure.

It is apparent that there are two elements which combine to constitute "wilful misconduct": 1, the act—which, in either actual or constructive "wilful misconduct," must be intentional or voluntary; 2, the result—which, in actual "wilful misconduct," must be a consequence of an intention to cause injury. In constructive "wilful misconduct" the intent to cause injury is established through a presumption of law, where the intentional act is conjoined with indifference to the safety of others after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury to them, and the jury finds the result to be a natural and logical consequence of the intentional act. This is upon the basis of the principle that a person is presumed to intend the natural and logical consequences of his voluntary acts.

The evidence in this case shows that the minor driver of the car in question intentionally drove his car at 50 or more miles an hour over an abrupt rise in the highway, of the existence of which the driver had knowledge, with the intent and purpose of giving the plaintiff and her friend a thrill.

The tragic result of defendant's act was in all probability not intended, but if that result was a natural and logical consequence of defendant's intentionally driving over that rise at that speed, that act, coupled with the result ensuing, in the face of the knowledge possessed by Diamond, Jr., and all the surrounding circumstances, might be found by the jury to constitute constructive wilful misconduct.

Having narrowed the case to the proposition that plaintiff, a guest of the driver, could recover against the father, who signed the minor's application for a license and entered into the statutory undertaking, only because of the "wilful misconduct" of the minor, we conclude that the evidence at the close of the case was such as required submission of the case to the jury as against both defendants, and that the trial court did not prejudicially err in overruling defendants' motions for a directed verdict.

The second assignment of error asserts that the trial court erred when it refused to charge the jury before argument in accordance with the written requests of appellants.

The rule as to requests to charge before argument is stated by the Supreme Court in *Sheen* v. *Kubiac,* 131 Ohio St., 52, 1 N. E. (2d), 943, as follows:

"1. Under the provisions of subsection 5 of Section 11420-1, General Code, a requested preargument instruction to a jury not only must be a correct statement of the law but it must relate to an issue in the case."

Appellants' requests Nos. 1 and 3 were incorrect statements of law because they contained instructions on wanton misconduct, which was not an issue in this case.

Instruction No. 2 was properly refused because it did not accurately set out the law as to "wilful misconduct." Instead, it closely approximated what the Supreme Court of Ohio said constitutes "wanton misconduct" in syllabus 2 of *Universal Concrete Pipe Co.* v. *Bassett,* 130 Ohio St., 567, 200 N. E., 843, 119 A. L. R., 646.

It is next claimed that the trial court erred in its general charge to the jury because the charge did not correctly state the law as to "wilful misconduct."

The court's charge on that subject follows:

"Wilful misconduct involves the element of intent or purpose, and is thereby distinguished from negligence. Wilful misconduct involves the element of malice or ill-will but it is not necessary to show actual malice or ill-will. It may be shown by indifference to the safety of others after knowledge of their danger, or failure after such knowledge to use ordinary care to avoid injury. It is not necessary that the wrongdoer should have knowledge of the peril of any particular person, but on the other hand any general knowledge or information that other persons are placed in a position of peril by his wilful misconduct is sufficient.

"This is based on the principle that a person is presumed to intend the natural and logical consequences of his acts."

The foregoing charge was lifted almost verbatim from the syllabus and opinion of the Supreme Court of Ohio in the case of *Payne, Dir. Gen.,* v. *Vance,* 103 Ohio St., 59, 133 N. E., 85, except that the term "wilful misconduct" was substituted for "wilful tort" appearing therein.

It is urged by appellants that the Supreme Court of Ohio has departed from the rule announced in *Payne, Dir. Gen.,* v. *Vance, supra,* by its decisions in the later cases of *Reserve Trucking Co.* v. *Fairchild,* 128 Ohio St., 519, 191 N. E., 745; *Universal Concrete Pipe Co.* v. *Bassett, supra; Vecchio* v. *Vecchio,* 131 Ohio St., 59, 1 N. E. (2d), 624; *Rothman* v. *Metropolitan C. Ins. Co.,* 134 Ohio St., 241, 16 N. E. (2d), 417, 117 A. L. R., 1169; and *Akers* v. *Stirn,* 136 Ohio St., 245, 25 N. E. (2d), 286.

We have carefully examined all of those cases, and we are unable to discover when, or in what case, the rule announced in *Payne, Dir. Gen.,* v. *Vance, supra,* has been modified, or overruled.

We are of the opinion that the rule announced therein is still the law of Ohio in cases involving "wilful tort." "Wilful misconduct," actual or constructive, which results in an invasion of the rights of another, constitutes a "wilful tort," and to that extent the two terms are synonymous.

The definition of "wilful tort" contained in paragraph 3 of the syllabus of *Payne, Dir. Gen.,* v. *Vance,* is comprehensive enough to include "wilful misconduct," whether actual or constructive, and hence the substitution of the term "wilful misconduct" in the charge of the court in the instant case for the term "wilful tort" used in that paragraph of the syllabus, was not erroneous.

The charge of the court as given was a correct statement of the law as to "wilful misconduct," and we find no prejudicial error therein.

By the fourth assignment of error it is claimed that the trial court erred in failing to declare a mistrial on application of appellants, because of evidence offered by appellee with respect to the interest of an insurance company.

The record discloses the following:

Jane Butcher was called by plaintiff. She was a guest in the Diamond car at the time of the accident. After examination by plaintiff's counsel, she was cross-examined by counsel for defendants. In the course of the cross-examination, inquiry was directed to a signed statement which she had given to someone. The time, place and persons involved in respect to the written statement were omitted on cross-examination, and plaintiff's counsel, on redirect examination, undertook to inquire as to these matters.

During questioning, the following occurred:

"Q. Whose handwriting is this? A. I don't know his name.

"Q. Was it a man or woman? A. I think an insurance man.

"Q. A man or woman? A. Man."

No objection or motion to strike was made by defendants' counsel to the reference to "an insurance man."

After further redirect and recross examination, plaintiff's counsel inquired:

"Q. What was said then by this gentleman, as to the purpose of your signing this (referring to the written statement)? A. I object.

"The Court: She may answer.

"Mr. Rabe: Exception.

"Witness: A. He told me he wanted me to give it so he could give it to an insurance company for my bills—doctor bills."

Again there was no request to strike the answer relating to insurance.

There appears in the record no mention of insurance upon the automobile of defendants, and, for aught that appears, the reference to insurance may have

been to insurance carried by the witness, who was not a party to the action.

The case of *Treftz* v. *Kirby*, 7 N. J. Misc., 555, 146 A., 688, is authority for the conclusion that the answers here given furnished no basis for declaration of a mistrial. That case states:

"1. In action for automobile collision damages, where plaintiff's witness was cross-examined as to whether he had made statement in writing as to details of accident, there was no error in permitting plaintiff on redirect to inquire to whom statement was made, nor was the answer that such statement was made to insurance man any ground for declaring mistrial."

In our opinion the statements concerning insurance were innocuous, and the court did not prejudicially err in refusing to grant a mistrial.

The judgment is affirmed.

*Judgment affirmed.*

Doyle, P. J., and Hunsicker, J., concur.