### Fischer v. White.

January 17, 1950.

B. H. Farnsley, Judge.

J. W. Jones and Jones & Jones for appellant.

William Miller, Davis, Boehl, Viser & Marcus for appellee.

MORRIS, COMMISSIONER—Affirming.

Appellant who was plaintiff below, sought to recover of defendant, her son-in-law, $26,000 on account of injuries received by her while riding as a guest in his automobile. At the conclusion of her evidence the court sustained defendant's motion for a directed verdict. The jury acted accordingly and judgment for defendant followed.

Mrs. Fischer's appeal presents the sole question as to whether or not the court was in error in sustaining that motion. In her petition appellant alleged that her injury occurred in Indiana and resulted from the negligence of defendant in the operation of his vehicle. After answer in denial, and pleading contributory negligence, Mrs. Fischer amended her petition, pleading that her injuries were caused by the "wanton misconduct" of defendant in operating his automobile. This brought into the case what may be termed the "guest law," upon and under which the case was tried out. Only two persons testified, Mrs. Fischer and her attending physician, the latter showing that she had received severe and painful injuries; as the case finally turned it is not necessary to refer to such testimony as relates to the injuries, their character and extent.

On August 8, 1947, Mrs. Fischer, her husband, and defendant and his wife, the latter a daughter of appellant, started from Louisville to Wisconsin on a fishing trip. Mrs. Fischer and the daughter were riding in the rear seat. On the right side of Mrs. Fischer was a metal coca-cola ice box. Mr. Fischer and appellee were on the front seat, the latter driving the car. The trip

led the party through the State of Indiana, and at some point on the highway the party stopped at a roadside table for the purpose of lunching. This point was ten or twelve miles from where the accident happened. There was objection raised to this place by the ladies, particularly appellant, because of odors and presence of ''green flies.'' Some discussion was had as to what should be done, and Mr. Fischer suggested that they drive on to some more suitable place. According to appellant's testimony appellee became peeved, and suggested that he would drive 250 miles further before they would stop to eat. The parties got back in the car; appellant says that appellee was mad, and drove the car at a speed which she estimated at 80 miles per hour; this speed had no connection with the accident, but it is argued that the fast driving showed appellee's state of mind.

As the party approached the town of Kentland they found that the road was being oiled. On inquiry of a workman White was told that a side road or detour would lead into Kentland, and he proceeded to take this road, which appellant describes as a dirt road surfaced with gravel. The car proceeded on this road; stopped for a railroad crossing, and then went on at a speed estimated by appellant at 35 or 40 miles per hour. Describing the accident appellant says that some distance beyond the railroad crossing, appellee was looking to his left side and called Mr. Fischer's attention to the growing corn crops, and that while his attention was thus directed the car struck something, either a ridge or drain in the road which caused Mrs. Fischer to be suddenly thrown upward, her head striking the hood of the car, and to fall to the floor of the car, momentarily stunning her.

On cross-examination she said that there had never been any ill-feeling between her and the son-in-law, ''I always treated him just as a son.'' Being pressed as to speed of the car she said, ''It was just a little too fast to be on that road,'' and admitted that she was just guessing at the speed. It was shown that upon the taking of her deposition as if on cross-examination, she had said, ''I couldn't tell how fast he was going. * * * I wasn't paying much attention.'' She did not know what the car struck which caused her to be thrown from her seat;

she said, "It must have been mighty deep." She admitted that the bump or impact did not cause the car to run off the road. She also admits that it was possible that she fell on the coca-cola ice box causing her injuries.

The record does not contain any part of the statute laws of Indiana which may be applied in consideration of the question at issue. There is copied into appellant's brief two sections from Burns' Indiana Statutes:

"47-1021. The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or wilful misconduct of such operator, owner, or person responsible for the operation of such motor vehicle."

"47-2004. No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

Appellant's contention is to the effect that the driving of the car in question over a gravelled road, at a speed estimated at 35 to 40 miles per hour, coupled with the fact that the driver momentarily took his eyes from the road, or in automobile language, "failed in lookout duty," made the operator guilty of wanton or wilful misconduct, or tends to show such guilt.

The latest Indiana case cited by appellant which gives legal meaning of the words "wanton misconduct," is Becker v. Strater, 117 Ind. App. 504, 72 N. E. 2d 580, 581, which as quoted reads:

"Wanton misconduct consists of the conscious and intentional doing of a wrongful act or omission of a duty, with reckless indifference to consequences, under circumstances which show that the doer has knowledge of existing conditions and that injury will probably result."

The Indiana Court had theretofore said in Bedwell v. DeBolt, 221 Ind. 600, 50 N. E. 2d 875, 878 that in determining what constitutes a wilful act "it is not neces-

sary to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequences of his act was injury to the plaintiff.''

The Ohio case cited (and Ohio has a similar guest law) is not persuasive here because of facts. In that case the defendant, a young boy, invited his friends for a pleasure ride. He drove the car to an unimproved road full of wheel tracks and bumps and ridges. He drove the car over a bump at 50 miles per hour for the purpose of thrilling his companions. His machine got out of control, ran against a tree causing serious injuries to the plaintiff. The court held the question of liability submittable to a jury. Tighe v. Diamond, 82 Ohio App. 487, 82 N. E. 2d 99.

In that case the court pointed out the difference in actual or constructive wilful or wanton misconduct; the former exists where there is the intent to injure; the other where the act causing the injury is intentional without voluntary intent to cause injury, and the perpetration of the wrongful intention must be accompanied by an indifference to the safety of others after knowledge of their danger. It is made clear that the act which may cause the injury must be intentional.

In a case later than those cited above Hoesel v. Cain, 222 Ind. 330, 53 N. E. 2d 165, 168, 769, it was shown that Cain was a guest of Hoesel in the latter's automobile. A car was following Hoesel's car and both were going about 50 miles per hour. Hoesel made effort to pass a car ahead of him, and an oncoming car came out of a dip in the road. Hoesel attempted to get back into his lane and his car skidded; the other car was close behind his car, and this situation caused a collision between his and the oncoming car, and Cain was injured and sought recovery which was finally denied. The court said:

''To justify recovery * * * there must have been more than a failure to apprehend the danger of driving into the wrong lane of traffic. That was mere negligence. To have been guilty either of wilful or wanton misconduct he must have intentionally proceeded with

knowledge of the peril or his conduct must have shown a conscious indifference upon his part as to whether or not his act would cause injury.'' See also McGann Securities Co. v. Coen, Ind. App. 48, N. E. 2d 58, 1000.

It is not shown that appellee was exceeding the speed limit at the time of the injury; the show of negligence, if it was such, was in momentarily looking to his left, calling attention to the corn field. The proof does not justify the conclusion that there was on the part of appellee the wanton doing of an act or omitting to perform a duty, under existing conditions which would or might lead to injury, not only to appellant but to his wife, his father-in-law and himself.

A reading of the opinions cited lead us to the conclusion that while the acts charged, or any one might well be held to have amounted to negligence, the proof fails to measure up to such acts, or any act which would constitute wilful or wanton misconduct. We are of the opinion that the trial court properly directed verdict for the defendant.

Judgment affirmed.