No. 1,157.

## Morrow v. Sweeney.

License.—*Public Use of Lot as Roadway.*—*Revocation of License.*— *Dangerous Obstruction.*—*Warning to Public.*—*Negligence.*—Where a lot owner has permitted the public to travel, in vehicles and otherwise, over his lot for a considerable time, until there was a well defined way across the lot, indicating that the public were in the habit of driving across the same, it amounted to a license to the public to cross the lot, and the lot owner was bound to take notice of it. If, in such case, there has not been a dedication of the way, the lot owner has the right to forbid the further use of the way, and to fence his property, but he must do so in a manner not calculated to injure those who attempt to continue to use the way without any knowledge of such revocation or of the barrier erected. To stretch a barbed wire across such way, without anything to warn the traveler of its existence, is not a discharge of the duty which such lot owner owes to the public, and is negligence.

From the Howard Circuit Court.

*J. F. Elliott* and *W. C. Overton*, for appellant.

*J. C. Blacklidge*, *C. C. Shirley* and *B. C. Moon*, for appellee.

Ross, J.—The appellee filed his complaint against the appellant to recover damages for an injury to a horse by coming in contact with a barbed wire fence placed by appellant around a lot owned by him in the city of Kokomo. Upon issue joined, there was a trial, verdict and judgment for appellee in the sum of forty-five dollars.

The complaint, omitting the caption, is as follows: "The plaintiff, Edward Sweeney, complains of the defendant, Jackson Morrow, and says that on or about the 25th day of November, 1892, the defendant, Jackson Morrow, was, and for two or three years prior to said date had been, the owner of lot No. 36 in Mansfield addition to the city of Kokomo, Howard county, Indiana;

that the said lot, in size, is fifty feet north and south and
two hundred and eight feet east and west, and is situated
upon the west side of what is known as Washington street
in said city of Kokomo, the east end thereof abutting
upon said Washington street extends north and south
through the said city; that in said Mansfield addition
there are platted 107 lots near the size of said lot 36.
Immediately west of a portion of said addition, and ex-
tending north and south through a portion of said city
of Kokomo, is a street known as Armstrong avenue; that
after said Mansfield addition was platted, which was four
to five years prior to said 25th day of November, 1892,
the same, said addition, was allowed to remain an open
common, the streets and alleys thereof being unimproved,
there being no lines or monuments by which the loca-
tion of said streets or alleys could be discovered or ascer-
tained; that in the additions to said city, west of said
Mansfield addition, and adjoining the same, were a large
number of lots which were unfenced, and were allowed
to remain an open common, also the streets and alleys
thereof being unmarked by any well defined lines; that im-
mediately south of said Mansfield addition, and forming
a portion of the southern boundary thereof, is a street in
said city known as Markland avenue, which, at the date
aforesaid, was much traveled, the lines and route thereof
being well marked and plain to view; that before the
platting of said additions, and until the date aforesaid,
and before the improvement of said Washington street,
or before there were any lines, marks or monuments in
any way to indicate the boundaries of the same, there
was a well defined wagon road, which was almost con-
tinuously traveled by the public, extending from the said
Markland avenue in a northwesterly and westerly direc-
tion across the line of said Washington street, and also
across said Armstrong avenue, and across said lot 36

aforesaid, so owned by the said Jackson Morrow; that said traveled track crossed said lot diagonally, passing over the same and entering it at a point about midway between the southwest and southeast corners thereof, and leaving the same near midway between the southwest and the northwest corners thereof; that said traveled way was used almost continuously before and after the platting of said addition by all those who desired to pass from said Markland avenue in a northwesterly direction across said addition or across said common, also by those who desired to travel in a southeasterly direction over and across said additions for the purpose of reaching said Markland avenue; that at no time after said traveled roadway became well defined and in constant use by the public in passing over the same with horses and vehicles, was there at any time placed therein an obstruction or barrier to indicate to the public that it was the desire of the various owners of the lots in said addition to prohibit the use of said roadway.

"Immediately south of the said lot 36, between it and the lot immediately south thereof, when said addition was laid off there was indicated in said plat an alley about ten or twelve feet in width; said roadway entering said alley at the east end thereof, where it intersected or entered said Washington street, and leaving said alley and crossing said lot at the points as hereinbefore set forth and indicated; that the travel upon said roadway across said commons and said lot was, as aforesaid, continuous and uninterrupted by persons traversing the same in attending to their business as well as by those who desired to use the same for pleasure-riding.

"That at no time prior to said date, to wit: the 25th day of November, 1892, was there any fence, barrier, line or monument, or obstruction of any kind upon the line or around said lot 36 to indicate or give warning to

those traveling upon said lot, that the owner of said lot intended to or desired to prevent the public from traveling across the same; that some time during the month of November, or during the fall of 1892, the said Jackson Morrow commenced a dwelling house upon the east end of said lot, and had the same nearly completed at the date aforesaid, but while the work upon said house was being prosecuted, at the said date aforesaid, no fence or obstruction of any kind was placed upon or around said lot to indicate to the public that the owner thereof, Jackson Morrow, intended to prevent or prohibit travel across the same; that by the building of said house the said roadway was in nowise obstructed or the travel across said lot in any way interfered with; that on or about the 25th day of November, 1892, the said Jackson Morrow placed small posts at the southwest corner and at the northeast corner of said lot, also at the northwest corner thereof, securely fastening the same, said posts, in the ground, and stretched and tightened a barbed wire from the post at the southwest corner thereof, and from said southwest corner to the post at the northwest corner, securely fastening the said wire to said posts, and so placing the same around said lot as to cause it to be about two and one-half to four feet from the ground; said wire being so constructed as to be hurtful and dangerous to animals and individuals coming in contact therewith, there being interwoven in said wire, as a part thereof, rough barbs, causing the same to be jagged and of such a character as to saw, lacerate and cut the flesh of animals or persons that might come in contact therewith.

"That the said Jackson Morrow, after placing said barbed wire, as aforesaid, around said lot, placed nothing across or near said traveled way to indicate to those traveling upon the same that the said roadway was

crossed by said barbed wire, or that the same existed; and did nothing whatever to indicate, and gave no notice of any kind, or warning, that the travel upon said roadway was in any wise interfered with; that the color of said barbed wire was such, and its size was such, that it could not be seen by persons traveling upon said road after dark, or at or near sundown of an evening, and could not be seen at any distance after dark, and could only be seen at a distance of forty or fifty feet in daylight.

"That said Jackson Morrow thus negligently and carelessly placed said wire across and over said roadway, as aforesaid, without giving any notice, warning, or indication of any kind to this plaintiff that he intended to or had placed the same across the said traveled way, and placed no obstruction, board or post, or anything of any character in and about said roadway to indicate or warn this plaintiff, and those traveling upon the same, that by passing over the said roadway they, or the horses that they might have attached to vehicles, would come in contact with the said barbed wire.

"That on or about the 25th day of November, 1892, the wife of this plaintiff, while driving along said roadway, about, or shortly after, sundown of said day, in a buggy of this plaintiff, with a valuable mare of this plaintiff attached thereto, she being at said time driving in a brisk trot, suddenly drove the said mare against said wire, and caused her to come violently in contact therewith, wounding and cutting the muscles of the breast of said mare, the sinews, arteries and veins thereof, the muscles of both fore legs, the blood vessels and ligaments in such a manner as to permanently disfigure and cripple the said mare, rendering her almost valueless; that the wife of this plaintiff, or this plaintiff at the time the said mare was so driven against and in contact

with said wire, had no knowledge that it had been so placed across said traveled roadway, and had no knowledge or warning of any kind that it had been so placed across the same; that the said Jackson Morrow at no time notified the wife of this plaintiff nor this plaintiff that he did not desire the plaintiff, his wife nor the public to cross said lot and travel said roadway; that the said mare was so injured and so driven in contact with said barbed wire without any fault or negligence of this plaintiff, or without any fault or negligence on the part of the wife of this plaintiff; that before said mare was so injured, as aforesaid, she was of the value of $200; that after said injury occurred, and after the same was pronounced healed and cured, said mare was worth less by $100 than she was before the same occurred; that for as much as three months this plaintiff was deprived of the use of said mare, which was of the value of $50; that he contracted and expended in the employment of a veterinary surgeon to look after, care for and attend to said animal, a bill amounting to $25; that by reason of the facts hereinbefore alleged, this plaintiff has been damaged in the sum of $200, for which he demands judgment against said defendant, and all just and proper relief."

The sufficiency of the complaint was tested by a demurrer, and held good. This ruling of the court is the first error assigned on this appeal.

The theory of the complaint is to recover on account of appellant's failure to give notice of his intention to erect, and for having erected, a barbed wire fence around his lot, over and across which persons were in the habit of driving their teams.

The appellant is charged in the complaint with having erected a fence from two and a half to four feet in height around his lot by stretching and fastening strands of

barbed wire to posts set in the ground.    Do the facts alleged show actionable negligence?

The facts alleged in order to constitute a cause of action must be sufficient to charge the defendant with a negligent breach of a duty, and the facts thus alleged must of themselves be such as will authorize the court to draw the legal inference of actionable negligence.  As a general rule negligence can not be presumed.  *Brazil Block Coal Co.* v. *Young*, 117 Ind. 520.    For no action can be maintained, although there is negligence, unless the party guilty of negligence was under some duty to the person injured.    Hence, it was the duty of the court, in passing upon the demurrer to the complaint, to determine whether or not the facts alleged, and which were admitted by the demurrer to be true, constituted actionable negligence.

"In every case involving actionable negligence, there are necessarily three elements essential to its existence. 1.  The existence of a duty on the part of the defendant to protect the plaintiff from the injury of which he complains.    2.  A failure by the defendant to perform that duty; and 3.  An injury to the plaintiff from such failure of the defendant.

"When these elements are brought together they unitedly constitute actionable negligence.    The absence of any one of these elements renders a complaint bad or the evidence insufficient."    *Faris* v. *Hoberg*, 134 Ind. 269.

In *Thiele* v. *McManus*, 3 Ind. App. 132, this court said: "A complaint for personal injury through negligence must show a legal duty or obligation of the defendant toward the person injured, existing at the time and place of the injury, which the defendant failed to perform or fulfill, and that the injury was occasioned by such failure."

The law accords to every person the right to the free use of his own property, subject only to the limitation that he so use it that he inflict no injury upon others.

In such use he is not bound to anticipate that others will go upon his property or put themselves in the way of his rightful use thereof, but he has a right to assume that his right to the use and possession is exclusive, except he has granted rights or privileges with reference thereto to others, in which event he is bound to so use it as not to interfere with their rights.

"There is an elementary and fundamental principle of law, which is based upon, and is coeval with, the right to own and control property, that a man must so use his own rights and property as to do no injury to those of his neighbor." *Gagg* v. *Vetter*, 41 Ind. 228.

There is a duty, therefore, resting upon all persons to so use their property that in such use they may not injure others in the exercise of their rights. The duty thus imposed extends only to the extent of recognizing and observing such rights. If no rights exist there is no duty imposed. In the case under consideration the question arises: what rights had appellee or the general public to pass over and across appellant's property? If no right of passage existed, and appellant had a right to enclose his property with a barbed wire fence, the complaint does not state a cause of action.

It is not contended that a highway had been established across appellant's lot by user. If appellee's wife attempted to drive upon appellant's lot, it was not because she was exercising the right of the general public to use a public highway. It must be inferred, therefore, that she was a trespasser unless the facts alleged show that she was a licensee.

"The owner or occupant of premises is not under any legal duty to keep them free or safe from the danger of

obstructions, pitfalls, excavations, trap doors or openings in floors for persons who go upon, into or through the premises, not by his invitation, express or implied, but for their own pleasure or convenience, though by his acquiescence or permission, and who, therefore, are mere licensees. Such a visitor enjoys the license subject to the attendant risks." *Thiele* v. *McManus*, *supra*.

When the owner induces another to come upon his lands, he thereby assumes the obligation of making them reasonably safe, and protecting such persons so induced to enter thereon from unseen dangers, but the law will not infer that the injured party was induced to enter, except the facts are sufficient to show an express or implied invitation. Mere acquiescence, or failure to object, is not sufficient to sustain such an inference.

It is alleged in the complaint, however, that prior to the time the appellant commenced to improve his property, and erected the fence complained of, a well defined road, which was almost continuously traveled by the public, extended across his lot. Whether he knew from actual observation that the public were in the habit of so driving, is immaterial, for if there was a well defined way across the lot, indicating that the public were in the habit of driving across there, he was bound to take notice of it. True, if the public had not used the way for a sufficient length of time, or under such circumstances as to create a highway by user, appellant had the right to forbid the further use, and to fence his property, but he must not do so in a manner calculated to injure those who attempt to continue to drive across without any knowledge of his revocation of the existing privilege, or that a barrier had been erected. Had the fence erected by appellant been of such a character that persons driving across the lot must have seen it, he could not be made to answer for any injury resulting therefrom, but

to stretch across a way used by the public a barbed wire, which in itself can not be seen after dark, without anything to warn the traveler of its existence, is equivalent almost to a desire to do injury.

The questions here discussed arose in the case of *Carskaddon* v. *Mills*, 5 Ind. App. 22, and were fully and ably discussed there, and we adhere to the principles there announced.

It is also urged by appellant's counsel, that the court erred in giving certain instructions to the jury. If we were to consider the instructions complained of separate and apart from the other instructions given, the objections urged to some of them might be entitled to some consideration, but, taking the instructions altogether, we are of opinion that they state the law correctly, and in no wise tended to mislead the jury.

There was no error in overruling the motion for a judgment on the answers to the interrogatories. The facts found in answer to the interrogatories were not such as could not be reasonably reconciled with the general verdict, hence did not overthrow the general verdict.

The court did not err in refusing to give the several instructions asked by the appellant. While some of them, in a measure, state general propositions of law correctly, they were not applicable to the facts in this case, as we view them. To point out wherein each instruction is defective would unnecessarily prolong this opinion and add nothing to what has already been decided. For that reason we thus summarily pass the questions urged in support of these instructions.

Under the evidence introduced, the verdict appears to be a just and proper one. We find no error in the record for which the judgment should be reversed.

Judgment affirmed.

Filed Sept. 19, 1894.