URBAN LUCIER, ADMINISTRATOR (ESTATE OF LEONARD
O. LUCIER), ET AL. *v.* MERIDEN-WALLINGFORD
SAND AND STONE COMPANY, INC., ET AL.

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued January 4—decided February 1, 1966

*Kevin T. Gormley,* with whom, on the brief, were *Martin E. Gormley* and *Gerald P. Dwyer,* for the appellant (named defendant).

*Alexander Winnick,* with whom, on the brief, were *Edward B. Winnick, Arnold M. Potash* and *David W. Skolnick,* for the appellees (plaintiffs).

HOUSE, J.   This action arose out of a fatal accident on March 18, 1962, when the named plaintiff's decedent, Leonard O. Lucier, who was operating a motorcycle on which the plaintiff Roger Gagnon was also riding, ran into a cable barrier maintained by the named defendant across its private road in Wallingford.   Lucier died as a result of the colli-

sion, and Gagnon sustained injuries. From verdicts in favor of Gagnon and the administrator of Lucier's estate, the named defendant, hereinafter called the defendant, has appealed. Assignments of error relate to the court's refusal to include certain facts set forth in two paragraphs of the defendant's draft finding, claimed errors in the charge, the admission into evidence of a photograph, the denial of the defendant's motion to set aside the verdict as unsupported by the evidence and the denial of the defendant's motion for judgment notwithstanding the verdict.

We consider first the claimed errors relating to the finding and then those relating to the charge and the ruling on evidence, the latter two of which must be tested by the claims of proof in the finding. *Shay* v. *St. Raphael Hospital,* 152 Conn. 604, 605, 210 A.2d 664; *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 494, 208 A.2d 748.

In the exact language of the defendant's draft finding, the court found that the defendant had offered evidence to prove and claimed to have proved that the defendant had no knowledge of anyone operating a motorcycle on its private road anywhere near the cable, but it added the time limitation of "on March 18, 1962." There was evidence to support the requested finding without the time limitation, and the defendant is entitled to this correction of the finding.

Similarly, in the exact language of the defendant's draft finding, the court found that the defendant had offered evidence to prove and claimed to have proved that it is common practice for anyone in business, such as the defendant, to place a cable across a private road leading to its premises "in order to keep out unauthorized people from enter-

ing its premises." The defendant is entitled to the addition to the finding of its further claim of proof that it is also a common practice to use such a cable rather than a wooden gate or other device to reduce the danger of personal injury to the occupants of any vehicles running into the barrier.

On the finding as thus corrected we consider the claimed errors in the charge. The accident occurred about 2 p.m. on Sunday, March 18, 1962, on the defendant's private road, which extended between the termini of two public highways. The road was the means of access to the defendant's gravel processing plant, which was not open for business at that time. Under these circumstances a determination as to the legal status of the decedent and Gagnon at that specific time and place was material.

The court fully charged the jury on the tests to be applied to determine whether the injured persons were trespassers, invitees or licensees and included instructions relevant to the application of the "misled invitee" doctrine under the rule of such cases as *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 95 A.2d 263. See Restatement (Second), 2 Torts § 367. The court instructed them as to the duty which a landowner, such as the defendant, owed to persons in each of these capacities. While the defendant has generally attacked these portions of the charge, the crux of its objection is embodied in its claim that the charge did not sufficiently stress the significance of the fact that the accident occurred on a Sunday afternoon, when the defendant's plant was not open for business.

"The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injus-

tice is not done to either party under the established rules of law. *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170." *DeCarufel* v. *Colonial Trust Co.,* 143 Conn. 18, 20, 118 A.2d 798. A charge must be read in its entirety; *Salvatore* v. *Hayden,* 144 Conn. 437, 442, 133 A.2d 622; and it is to be considered from the standpoint of its effect upon the jury in guiding them to a correct verdict. *Kowal* v. *Archibald,* 148 Conn. 125, 129, 167 A.2d 859. In its charge the court expressly reminded the jury that "[t]he basic claim of the plaintiffs in this case is that in the afternoon of Sunday, March 18th, 1962, Leonard Ovide Lucier was driving a motorcycle in a southerly direction on a roadway in the Town of Wallingford." Repeatedly the charge reminded the jury that they were to consider all of the evidence in the case and the situation as they found it to be on the day in question. Read in its entirety, the charge was accurate in law, adapted to the issues and sufficient as a guide to the jury in reaching a correct verdict. *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 254, 113 A.2d 361.

During the trial the plaintiffs offered as an exhibit three photographs of the body of the decedent which were taken at a funeral home. The defendant objected that they would tend to inflame the jury. The court excluded two of the proffered photographs but admitted one of them which clearly showed a long scar on the neck which the plaintiffs claimed resulted from the decedent's contact with the cable. The ruling came after a doctor who had examined the body at the funeral home testified that, although he could verbally describe the scar, a description would not be as adequate as the actual photograph. We cannot say that the trial court abused its discretion in admitting the photograph

upon concluding that its value as evidence outweighed its possibe prejudicial effect. *Thibodeau* v. *Connecticut Co.,* 139 Conn. 9, 14, 89 A.2d 223; see *State* v. *Hanna,* 150 Conn. 457, 460, 191 A.2d 124.

The remaining assignments of error are the court's denial of the defendant's motion to set aside the verdict because it is not supported by the evidence and the court's denial of the defendant's motion to render judgment notwithstanding the verdict. We examine these rulings of the trial court on the basis of the evidence printed in the appendices to the briefs, and the verdict of the jury must stand if they could reasonably have reached their conclusion. *Chanosky* v. *City Building Supply Co.,* 152 Conn. 642, 643, 211 A.2d 141. The evidence must be given the most favorable construction to which it is reasonably entitled in support of the verdict. *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748.

From the evidence the jury could have found the following facts: The defendant owned and maintained an unpaved private road which connected Buel Street and Pent Road, two paved public highways in Wallingford, and which served as a means of access for the public to its sand processing plant. The road surface was yellow-brown in color and was graded to a smooth traveling surface for vehicles. At one end the road was a southerly continuation of Buel Street, and, where they joined, both roads were the same width. There was a trailer park on Pent Road, and almost everybody in the park used the defendant's road to get to Buel Street. The defendant arranged a cable barrier across its road 408 feet south from Buel Street. One end of the cable was attached to a tree on the east side of the road and the other to a post on the west side.

At this point the road was about twenty-five feet wide and at a down grade from the southerly end of Buel Street. The cable was rusted, dark brown in color and about three-eighths of an inch in diameter. Attached to it was a dirty, grimy metal plate, six inches by twelve inches. The roadside brush in the area was also a brown color. The cable at its lowest point sagged to about two feet and two inches above the surface of the road. To the south of the cable there was a slight rise in the road. During the period in which the defendant's plant was in operation, on a five-day week from 8 a.m. to 4:30 p.m., the cable was always down, and cars would freely pass along the road to and from Pent Road and the defendant's plant. The defendant knew that people used the road as a passway and that is the reason it provided the barrier. The cable was raised across the road by the defendant's employees at the close of each day's work.

The only indication of danger or warning sign in the whole area was one eight-by-ten-inch sign reading "Private Property Keep Out." This sign, however, was not on the defendant's land but was attached to a telephone-telegraph pole on the adjoining land of the railroad and was about nine or ten feet to the east of the defendant's road. Prior to March 18, 1962, the decedent had driven his motorcycle over the defendant's road to visit his brother in the trailer park, but his use of the road was always on a workday when the cable was not raised. On Sunday afternoon, March 18, when the defendant's plant was not in operation, the decedent, with Gagnon as a passenger on his motorcycle, was going to visit his brother at the trailer park. He drove along Buel Street and continued onto the defendant's road and into the cable as a result of which

both men sustained injuries, those to the driver being fatal. At the point of impact between the motorcycle and the cable, the cable was two feet and two inches above the surface of the road.

On these facts, with the inferences to be reasonably drawn from them, the jury could reasonably conclude that the defendant created and maintained on its premises a condition which in the exercise of due care it should have known would be likely to cause death or serious bodily harm to trespassers when it knew that trespassers used that limited portion of the premises under such circumstances that they would not discover the condition in time to avoid injury. Nevertheless, it failed to exercise reasonable care to warn them of the existence of the condition and the risk involved. These circumstances would justify the finding of liability. See *Olderman* v. *Bridgeport-City Trust Co.,* 125 Conn. 177, 182, 4 A.2d 646; Restatement (Second), 2 Torts § 335. Also, on the facts, the jury could properly find the defendant liable under the rule of such cases as *Mercier* v. *Naugatuck Fuel Co.,* 139 Conn. 521, 95 A.2d 263. The rule is summarized in Restatement (Second), 2 Torts § 367 as follows: "A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."

The court properly denied the motions to set aside the verdict and for judgment notwithstanding the verdict.

There is no error.

In this opinion the other judges concurred.