May HARPER, as Administratrix of the Estate of James Leslie Harper, deceased, Appellant (Plaintiff Below),

v.

Charles KAMPSCHAEFER and Mary Kampschaefer, Appellees (Defendants Below).

No. 22A04–8902–CV–41.

Court of Appeals of Indiana, Fourth District.

Feb. 12, 1990.

---

did not specifically identify his double jeopardy concerns.

Cynthia L. Winkler and Gordon D. Ingle, Winkler, Fifer & Ingle, New Albany, for appellant.

James E. Bourne, Wyatt, Tarrant, Combs & Orbison, New Albany, for appellees.

CHEZEM, Presiding Judge.

### Case Summary

Plaintiff–Appellant, Harper, appeals the entry of summary judgment in favor of the Defendants–Appellees, Kampschaefers on a complaint for the wrongful death of James Leslie Harper ("the decedent"). We reverse.

### Issue

Harper raises two (2) issues, which we restate as one:

Whether there was a genuine issue of material fact which precluded the entry of summary judgment.

## Facts

Sometime in early 1985, Charles Kampschaefer strung a ⅜" cable across a wooded path between two trees. The cable was wrapped around the trees and clamped. The evidence is unclear as to exactly where on the path the cable was. Apparently, the cable was located somewhere near the entrance of the path, but not at the entrance itself. Mr. Kampschaefer placed the cable across the path to prevent people with motorcycles and four wheel drives from trespassing on the property.

On August 25, 1985, the decedent, and three other friends, were riding on two (2) four-wheel all-terrain vehicles ("ATV's") in Kampschaefer's field. The group had been attending a farewell party for a friend and at some point during the party left to ride the ATV's. The decedent was driving one of the ATV's and Brian Fulkerson sat behind him. They were accompanied by David Speth and Vanessa Hublard, who rode the second ATV. The foursome rode the ATV's for some time and then stopped in a field which was adjacent to the Kampschaefer property. The group decided to return by way of the path that went across the Kampschaefer property, so they could return by way of a road rather than travel through the woods, since it was dark. The decedent asked the others if they remembered where the cable was located; no one could recall.

The decedent led the group to the path where the cable was located. The decedent and Fulkerson went down an incline on the path and were unable to stop before the cable caught the decedent by the neck. He was dead at the scene as a result of the injury. A test performed on the decedent's body indicated that his blood had a blood alcohol content of .15%.

■ Harper filed an action for wrongful death in the Floyd Circuit Court against the Kampschaefers. On June 30, 1988, the Kampschaefers filed a motion for summary judgment. The depositions of Brian Fulkerson, Vanessa Hublard, David Speth, Mary Kampschaefer, Charles Kampschaefer and Lisa Barton were filed and ordered published by the trial court. However, the depositions remained sealed and were opened by the clerk in the preparation of the record in this case; thus, the depositions may not have been viewed by the trial court.[1] Affidavits were also filed with the court. On September 13, 1988, the trial court granted the Kampschaefers' motion and entered judgment in their favor.

## Discussion and Decision

When reviewing an entry of summary judgment, the standard of review is the same as it was for the trial court: whether there was no genuine issue of material fact and whether the moving party was entitled to judgment as a matter of law. We stand in the position of the trial court and consider the same matters. A fact is material for summary judgment purposes if it helps prove or disprove an essential element of the plaintiff's cause of action. *Graves v. Summit Bank* (1989), Ind.App., 541 N.E.2d 974. The movant bears the burden of establishing the propriety of summary judgment, and all facts, and inferences drawn

---

1. We note that our supreme court has determined that publication of depositions is a prerequisite to their becoming a part of the record. *R.A. Augustine v. First Federal Savings and Loan Association of Gary* (1979), 270 Ind. 238, 384 N.E.2d 1018. The court defined publication as "the breaking of the sealed envelope containing the conditional examination and making it available for use by the parties or the court." 270 Ind. at 240, 384 N.E.2d at 1020. However, the act of publication itself is a clerical function. *See* Burns Ind.Stat.Ann. 2–1520 (1968). In this case the trial court ordered that the depositions be published. Record at 123, 142. In *Augustine,* the Supreme Court held that the depositions did not become a part of the record since

the depositions had not been *ordered* published. 270 N.E.2d at 242, 384 N.E.2d at 1021. Justice, then Chief Justice, Givan wrote as follows:

... Until the deposition is published, *by order of the court* upon a motion of either party, the deposition cannot be taken into account by the court in ruling on any motions of the parties.

*Id.,* 270 Ind. at 241, 384 N.E.2d at 1020 (emphasis added).

Here, the depositions were ordered published by the trial court upon motion of the parties. The failure of the clerk to to perform a ministerial duty to actually break the seal of the depositions did not prevent the depositions from becoming a part of the record.

from those facts, must be viewed in the light most favorable to the non-moving party. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207.

Both parties concede that Harper's decedent was either a trespasser or a licensee; thus, the Kampschaefers only owed Harper's decedent a duty to refrain from wantonly or willfully injuring him while he was on the Kampschaefers' property. *Gaboury v. Ireland Road Grace Brethren, Inc.* (1983), 446 N.E.2d 1310. Harper claims genuine issues of material fact existed in determining whether the Kampschaefers' actions were wanton and willful. Harper cites three (3) tests which have been established to determine whether a defendant has breached such a duty:

(1) The positive wrongful act test— *Woodruff, Administratrix v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113;

(2) The willful or wanton misconduct test—*Lingenfelter v. Baltimore, Ry. Co.* (1900), 154 Ind. 49, 55 N.E. 1021; and

(3) The entrapment-affirmative control of the instrument test—*Pier v. Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255.

Harper concedes that the positive wrongful act test does not apply; she argues that there were genuine issues of material fact as to the application of the other two tests, which would preclude the entry of summary judgment.

### A

■■ The entrapment-affirmative control test requires that the alleged tortfeasor: (1) created a trap; and (2) had affirmative control of the instrumentality which created the trap. *See Pier v. Schultz*, 243 Ind. at 204, 182 N.E.2d at 257; *Kidd v. Davis* (1985), 485 N.E.2d 156, 159. A trap is a hazard which is concealed and not discernible by the use of reasonable care. *Kidd* at 159. Thus, entrapment does not occur when the trespasser has full

knowledge of the circumstances and the condition of the premises. *Id.*

■■ Here, the evidence demonstrated that the decedent knew of the existence of the cable on the premises. Therefore, the plaintiff cannot claim that her decedent was "entrapped" by the Kampschaefers.[2]

### B

■■ The willful or wanton misconduct test establishes liability when a defendant exhibits conduct which is so grossly deviant from everyday standards that the licensee or trespasser cannot be expected to anticipate it. *Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872.

■■ The Kampschaefers argue that the decision of our supreme court in *Gaboury v. Ireland Road Grace Brethren, Inc.* and the decision of our first district in *French v. Sunburst Properties, Inc.* (1988), Ind. App., 521 N.E.2d 1355 are controlling in this case and the Kampschaefers are entitled to judgment as a matter of law. In *Gaboury*, the plaintiff was injured when his motorcycle struck a cable which had been stretched across a driveway leading to the defendant church's parking lot. The Supreme Court determined, as a matter of law, the church's act of closing the parking lot by stretching a cable across the driveway was not willful or wanton. *Gaboury* at 1315. In *French*, the plaintiff was injured when he tripped over a cable barricade which was erected across the entrance to an apartment complex parking lot. The First District of this court held that the' defendant apartment complex was not liable since, as a matter of law, the erection of the barricade did not constitute willful or wanton misconduct toward the plaintiff. *French* at 1357.

Here, neither *Gaboury*, nor *French*, are dispositive. The cable used in this case was stretched across a wooded path. In *Gaboury* and *French* the cable was discernible with reasonable diligence since they

---

**2.** In her reply brief, Harper claims summary judgment would be inappropriate on this issue since Hublard's testimony contradicts the testimony of Fulkerson and Speth. However, Hublards testimony does not "contradict" the other

two depositions; Hublard testified that she could not remember anyone discussing the cable's existence when the group stopped in the field. Deposition of Vanessa Hublard at 20–21; Record at 143a.

were stretched over open areas adjacent to public streets. The issue of whether the cable was placed on the path with willful or wanton intent is a genuine issue of material fact for the jury.

In *Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, our third district directed entry of summary judgment where there had been no allegation that the defendant had willfully or wantonly positioned a cord such as to injure the plaintiff. Here, Harper has alleged in her complaint that the Kampschaefers acted with a willful and malicious intent in stringing the cable across the path.

Charles Kampschaefer testified that he strung the cable across the path in response to motorcycle riders and drivers of four-wheel drive vehicles being on the property; the cable was placed on the path after at least two confrontations with drivers of such vehicles. Deposition of Charles Kampschaefer at 18–22; Record at 123a. There was also conflicting evidence as to whether there were any markings to warn of the presence of the cable.[3] There were no "no trespassing" signs facing the direction from which the decedent approached the cable. Thus, an inference may be drawn that Mr. Kampschaefer placed the cable there with a willful or wanton intent, which is sufficient to create a genuine issue of material fact for trial.

Furthermore, in *Surratt v. Petrol, Inc.* (1974), 160 Ind.App. 479, 312 N.E.2d 487, *reh. denied,* 160 Ind.App. 479, 316 N.E.2d 453, this court adopted the position of the Restatement (Second), Torts, section 336 (1965), which reads as follows:

> A possessor of land who knows or has reason to know of the presence of another who is trespassing on the land is subject to liability for physical harm thereafter caused to the trespasser by the possessor's failure to carry on his activities upon the land with *reasonable care* for the trespasser's safety.

*Id.* (emphasis added).

■■■ Thus, this court announced in *Surratt* that a landowner owes no duty to lookout for a trespasser, but once a trespasser has been discovered, the landowner owes the trespasser a duty of reasonable care not to increase his peril. *Surratt,* 160 Ind.App. at 498–488, 312 N.E.2d at 492–495. Here, Mr. Kampschaefer placed the cable on the path *after* discovering the presence of trespassers. Therefore, he owed them a duty of reasonable care to not increase their peril on the property. Thus, there is genuine issue of material fact as whether Kampschaefer breached that duty.

Accordingly, the judgment is reversed and this cause is remanded for further proceedings.

MILLER, J., concurs.

CONOVER, J., dissents with separate opinion.

CONOVER, Judge, dissenting.

While I agree with the majority's conclusion neither the positive control act test nor the willful or wanton misconduct test apply here, I also believe the entrapment—affirmative control test does not apply here either.

In both *Gaboury* and *French,* relied upon by the majority, the cable stretched across the entrances there in question were discernible with the exercise of reasonable diligence. The stretching of such a cable across such a path on private property, in and of itself, does not constitute a trap. In *Gaboury,* the majority said:

> The closing of a driveway by a cable, a gate, or other form of obstruction is not so unusual a situation in our society that it can be considered a dangerous or hazardous condition. It certainly is a condi-

---

**3.** Charles Kampschaefer testified in his deposition that he placed six (6) to eight (8) white ribbons on the cable. Deposition of Charles Kampschaefer at 23; Record at 123a. Mary Kampschaefer testified in her deposition that she never saw any ribbons on the cable, but suggested that her husband mark the cable. Deposition of Mary Kampschaefer at 22–23; Record at 123b. None of the other deponents or affiants ever saw any ribbons or markings warning of the presence of the cable.

tion that can be determined by ordinary and reasonable care

. . . .

*Gaboury,* 446 N.E.2d at 1315. Thus, the Kampschaefers' cable was not a trap nor was it a willful or wanton act, *ipso facto.* The undisputed facts show the Kampschaefers placed the cable across their private path after two confrontations with trespassers on ATV's. Given a legal right so to do, the placing of such a cable for such purposes cannot be a willful or wanton act, as a matter of law, absent affirmative evidence to the contrary. *Id.* at 1315. There is no such evidence or inference they did so here.

I would affirm the trial court in all things.