**SEEHOLZER, Appellant,**

v.

**KELLSTONE, INC., Appellee.**

[Cite as *Seeholzer v. Kellstone, Inc.* (1992), 80 Ohio App.3d 726.]

Court of Appeals of Ohio,
Erie County.

No. E–91–38.

Decided July 24, 1992.

*James Martin,* for appellant.
*Drew Hanna,* for appellee.

ABOOD, Judge.

This is an appeal from a summary judgment granted by the Erie County Court of Common Pleas in favor of defendant-appellee, Kellstone, Inc.

Plaintiff-appellant, John Seeholzer, sets forth three assignments of error:

"1. The trial court erred in failing to recognize genuine issues of material fact regarding whether Appellee refrained from willfully or wantonly causing injury to Appellant.

"2. The trial court erred in failing to recognize genuine issues of material fact regarding whether Appellee acquiesced in Appellant's presence on Appellee's property.

"3. The trial court erred in finding that when all the evidence submitted was construed most favorably for Appellant, reasonable minds could come to but one conclusion which was adverse to Appellant."

The facts that are relevant to a determination of the issues raised by this appeal are as follows. On September 20, 1987, appellant was injured while operating a four-wheel, all-terrain vehicle ("ATV"), when he struck an unmarked cable stretched across a pathway in a wooded area on appellee's property on Kelleys Island, Erie County, Ohio. On October 13, 1988, appellant filed a complaint in the Erie County Court of Common Pleas which alleged that appellee was negligent by failing to alert the public to the existence of the cable. On March 19, 1991, appellee filed a motion for

summary judgment and, on April 16, 1991, appellant filed a memorandum in opposition to appellee's motion for summary judgment.

The record that was before the trial court upon summary judgment consisted of the pleadings; appellant's affidavit and responses to interrogatories; the affidavits of Lynn Holdren, Barbara Feyedelem, Kim Fogle, Robert Fogle, Daniel Schwerer, Joan Chamberlain, and Charles E. Moore; and the deposition and affidavit of Karl Hauser.

Appellant stated in his affidavit and answers to interrogatories that prior to September 20, 1987, he and others regularly used appellee's property to swim, to fish, and to ride motorcycles, dirt bikes, three wheelers and ATVs; that at no time prior to the incident was he aware that the property was closed to the public; and that he never saw a "no trespassing" sign. Appellant stated further that on September 20, 1987, he entered the property from Huntington Street on his ATV at about 12:00 noon; that he had been riding for about twenty minutes when he struck the unmarked cable; and that the cable which was strung between two poles across the pathway was approximately four feet high.

In their affidavits, Chamberlain, Schwerer, Feyedelem, Holdren and Robert and Kim Fogle collectively stated that they have lived on Kelleys Island for various periods of time between 1946 and 1991; that there was a quarry on the property; that they believed the property to have been open to the public; that they and others used the property, including the area where appellant was injured, to swim, run, hike and drive dirt bikes, three-wheelers, motorcycles, bicycles, cars, trucks and golf carts; that they never observed any "no trespassing" sign or other such signs on appellee's property; that trash cans were provided in various areas throughout the property for pop bottles and other trash; that no attempt had been made by anyone to keep the public from the premises; and that on occasion the police would visit the premises and simply look around and then leave.

Hauser testified in his deposition, taken June 26, 1990, that he had been the manager and overseer of this property since 1983; that it was his job to maintain security on the property; that in 1983, he arranged for Burt Miller to be caretaker of the property; that Miller's duties included keeping the property posted and keeping people out however he could; that appellee had requested that the Police Chief of Kelleys Island keep trespassers off the property; that some people had been arrested for trespassing, but none prosecuted; that he had been to the property ten times over a fifteen-year period; and that he was aware that "trespassers" did make significant use of the property as a recreational area because " * * * it's one of the few open spots on Kelleys Island that is open area." He further testified as follows:

"Q. Do you recall how many signs you saw at any particular time when you were there?

"A. No, I don't.

"Q. Did you tour the whole perimeter of the property every time you went?

"A. No, but he [Miller] had them generally every 300 feet or something like that along Bookerman Road, the other entrances.

" * * *

"Q. And you certainly don't know what conditions these no trespassing signs were in in 1987 when Mr. Seeholzer was injured, is that correct?

"A. I don't even know when in 1987 he was injured. No, I can't say that at any certain time there were some or what condition they were in."

In his affidavit dated March 18, 1991, however, Hauser stated that:

"This mound of dirt and 'No Trespassing' sign [depicted in two pictures stapled to his affidavit] is in the immediate vicinity of the scene, where Plaintiff claims he was injured on September 20, 1987; this mound of dirt and sign were in place, as shown, on the said date on which Plaintiff was injured."

He also stated that he had not known that appellant was on the premises on September 20, 1987, and that he had not intended to injure him.

In his affidavit, Moore stated that he is the Chief of Police of Kelleys Island; that the accident site is located approximately two hundred feet to the east of Bookerman Road; that at the location of the accident there is a cable " * * * to keep trespassers from coming on to the property. There are numerous other similar cables in use on Kelleys Island * * *. The use of cables in this way is a reasonable method of preventing trespassers from entering upon the property"; and that in his opinion the location of the accident site is such that there is no probability of injury to persons properly using Bookerman Road or who might accidentally stray from the paved surface of Bookerman Road.

On June 17, 1991, the trial court filed its judgment entry, which states:

"It is hereby ordered that:

" * * *

"(XX) Defendant's Motion for Summary Judgment is granted."

It is from this judgment that appellant brings this appeal.

Preliminarily we note that, from the trial court's summary entry, this court has no way to determine if the trial court applied the proper standard in its consideration of appellee's motion for summary judgment. Pursuant to Civ.R.

56, summary judgment may only be granted if, as to a particular claim, there remains no genuine issue as to any material fact and, when construing those facts most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Here, since the trial court made no such determinations, its summary judgment was clearly inappropriate and is subject to reversal on that basis alone.

Since, however, this case has been pending for such an extended period of time and this court's review of summary judgment is *de novo*, we will defer to the interests of the parties and proceed to consider this appeal on its merits.

## I. TRESPASSER—WILLFUL OR WANTON CONDUCT

In his first assignment of error, appellant contends that the trial court erred in failing to recognize that a genuine issue of material fact exists whether appellee willfully or wantonly caused injury to him. In support, he argues that a property owner has a duty to refrain from willfully or wantonly causing injury to a trespasser and that the erection of an unmarked cable across a pathway, where the owner knows that trespassers ride their motor vehicles, constitutes willful or wanton conduct.

■ In the first part of his third assignment of error, appellant contends that reasonable minds could conclude that appellee's conduct is willful or wanton.

Appellee responds that (1) there is no evidence that it intended to injure; (2) it took positive steps to discourage trespassing, *i.e.*, posted "no trespassing" signs, placed steel cables across the pathway and authorized the police to arrest trespassers; (3) it did not know " * * * that motorcyclists (or all-terrain vehicle motorists) were regularly using the particular roadway (or pathway) where the Plaintiff was allegedly injured"; and (4) such use of cables is not so unusual as to constitute a dangerous or hazardous condition or a trap. Appellee additionally argues that in the absence " * * * of any evidence to the effect that the roadway (or pathway) upon which the Plaintiff was injured was regularly and continuously used by motor vehicles such as motorcycles and all-terrain vehicles * * *, it cannot be said that the Plaintiff [*sic*, defendant] acted unreasonably in placing a cable across the roadway." Appellee does not argue the applicability of the recreational use statute.

■ This court has previously stated that the standard of care owed by property owners to an undiscovered trespasser is only to refrain from injuring him by willful or wanton conduct. *Preston v. Baltimore & Ohio RR. Co.* (1988), 49 Ohio App.3d 70, 73–74, 550 N.E.2d 191, 195.

In that case we went on to explain that:

" 'Willful conduct "involves an intent, purpose or design to injure." *Denzer v. Terpstra* (1934), 129 Ohio St. 1, 1 O.O. 303, 193 N.E. 647, paragraph two of the syllabus; see, also, *Reserve Trucking Co. v. Fairchild* (1934), 128 Ohio St. 519, 191 N.E. 745; *Motorists Mut. Ins. Co. v. Bill* (1978), 56 Ohio St.2d 258, 266, 10 O.O.3d 398, 402, 383 N.E.2d 880, 884. Wanton conduct occurs when one "fails to exercise any care whatsoever toward those to whom he owed a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result * * *." *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus; *Brooks v. Norfolk Ry. Co.* [ (1976), 45 Ohio St.2d 34, 74 O.O.2d 53, 340 N.E.2d 392], *supra.' McKinney [v. Hartz & Restle Realtors], supra* [31 Ohio St.3d 244], at 246, 31 OBR [449] at 451, 510 N.E.2d [386] at 388–389." *Id.*, 49 Ohio App.3d at 73–74, 550 N.E.2d at 195, quoting *McKinney v. Hartz & Restle Realtors* (1987), 31 Ohio St.3d 244, 246, 31 OBR 449, 451, 510 N.E.2d 386, 388–389.

Courts have invariably recognized that it is willful or wanton conduct on the part of a landowner or occupier to erect or maintain a wire or cable across a road or path where he knows or has reason to believe that trespassers ride their vehicles, where the wire or cable is not readily discernible, marked or otherwise warned against. *Highfield v. Liberty Christian Academy* (1987), 34 Ohio App.3d 311, 518 N.E.2d 592; *Harper v. Kampschaefer* (Ind.App.1990), 549 N.E.2d 1067; *Trout v. Bank of Belleville* (1976), 36 Ill.App.3d 83, 343 N.E.2d 261 (overruled by statute, Ill.Rev.Stat.1989, Chapter 80, paragraph 301 *et seq.*, eff. 9–12–84, which established reasonable care to all entrants under the circumstances); *Morrow v. Sweeney* (1894), 10 Ind.App. 626, 38 N.E. 187; *Carskaddon v. Mills* (1892), 5 Ind.App. 22, 31 N.E. 559; *Antonace v. Ferri Contracting Co.* (1983), 320 Pa.Super. 519, 467 A.2d 833; *Lucier v. Meriden–Wallingford Sand & Stone Co.* (1966), 153 Conn. 422, 216 A.2d 818; *Johnson v. Schafer* (1988), 110 Wash.2d 546, 756 P.2d 134; *Rice v. Miniver* (1987), 112 Idaho 1069, 739 P.2d 368; *Evans v. Miller* (1973), 8 Wash.App. 364, 507 P.2d 887; see, also, Annotation (1972), 44 A.L.R.3d 355.

As to appellee's argument that the stringing of a cable across one's private road does not amount to a "trap," even those courts that have rejected the analogy to a "trap" have recognized that such conduct may be willful or wanton, depending upon the facts of the particular case.

In *Gaboury v. Ireland Road Grace Brethren, Inc.* (Ind.1983), 446 N.E.2d 1310, upon which appellee relies heavily, the Supreme Court of Indiana held that the closing of a church driveway adjacent to a public street by a cable does not amount to a "trap." In so holding, the court found that:

"The closing of a driveway by a cable, a gate, or other form of obstruction is not so unusual a situation in our society that it can be considered a dangerous or hazardous condition. It certainly is a condition that can be determined by ordinary and reasonable care on the part of the licensee. Further, there is no showing nor even an allegation that this was done by the church with any willful or wanton intent. * * * " *Id.* at 1315.

Later, however, in *Harper, supra,* the Indiana Court of Appeals was confronted with a case involving a trespasser injured by a cable stretched across a path in a *wooded* area. In that case, there was an allegation that defendant's conduct was willful or wanton.[1] The court found that irrespective of whether the plaintiff may recover under "the entrapment—affirmative control test," he may establish liability under "[t]he willful or wanton misconduct test." *Id.,* 549 N.E.2d at 1070. In so finding, the court stated:

"Here, neither *Gaboury,* nor *French,* are [*sic*] dispositive. The cable used in this case was stretched across a wooded path. In *Gaboury* and *French* the cable was discernible with reasonable diligence since they were [*sic*] stretched over open areas adjacent to public streets. The issue of whether the cable was placed on the path with willful or wanton intent is a genuine issue of material fact for the jury."[2] *Id.,* 549 N.E.2d at 1070–1071.

As to appellee's argument that it did not know that riders used the particular pathway on which appellant was injured, such knowledge is a jury question when it is shown that the defendant property owner is aware that dirt bike riders are using the property in general and strings an unmarked cable on the road where plaintiff is injured. See, *e.g., Antonace, supra.*

■ As to appellee's argument that recovery is limited to cases where the roadway is regularly and continuously used, this is indeed one recognized exception to landowner immunity which is known as the "frequent trespass on limited area" exception, or the "beaten path" exception. See Prosser &

---

**1.** Appellee states in its brief that "[i]t is conceded that the Plaintiff's Complaint does allege that the Defendant acted in a willful and wanton manner."

**2.** Cf. 44 A.L.R.3d 355, *supra,* Section 21 (roadway cases) with Section 36 (driveway cases). Appellee also relies upon *Johnson, Rice,* and *Trout, supra,* and *Lacarte v. New York Explosive Corp.* (1979), 72 A.D.2d 873, 421 N.Y.S.2d 949. *Lacarte,* however, was not a stretched-cable case, but a case in which the plaintiff crashed into a closed iron gate on a return trip after having initially discovered and circumvented the gate. *Johnson, Rice,* and *Trout* did not address the "trap" theory of recovery at all, but denied recovery on the basis that defendant had no knowledge that trespassers used the premises or that the cable was readily discernible or clearly marked. Each of these cases, however, recognized the general existence of a cause of action based on willful or wanton conduct in stretching a cable across a private pathway with reason to believe that trespassers use the path and will strike it.

Keeton on Torts (5 Ed.1984) 395–396, Section 58. Some courts have recognized a cause of action in the stretched-cable cases pursuant to this exception. See, *e.g., Highfield, supra; Lucier, supra; Trout, supra.* This is not, however, the exclusive basis upon which recovery may be sought by a trespassing motorist injured by a cable stretched across a private pathway. A landowner's conduct in stretching a cable across a pathway may be willful or wanton toward a trespasser without such conduct having occurred on a "beaten path." *Highfield, supra; Antonace, supra; Harper, supra; Evans, supra;* Prosser & Keeton on Torts, *supra,* 396–399, Section 58; 5 Harper, James & Gray, The Law of Torts (2 Ed.1986), Section 27.3 *et seq.;* Restatement of the Law 2d, Torts (1965), Section 333 *et seq.*

In this case, it is undisputed that appellee knew that trespassers made significant recreational use of its property. Chief Moore stated that the purpose for the cable was to keep trespassers away. Although Hauser testified that "no trespassing" signs were posted, appellant's witnesses stated that they have lived on Kelleys Island for varying time periods between 1946 and 1991, during which they made use of appellee's property, but never saw a "no trespassing" sign. Hauser stated in his affidavit that a particular "no trespassing" sign was erected and in place on September 20, 1987, in the immediate vicinity where appellant was injured, but this statement directly contradicts his deposition testimony nine months earlier that he " * * * can't say that at any certain time [in 1987] there were some ['no trespassing' signs] or what condition they were in." Hauser also testified that the police were authorized to arrest trespassers, but appellant's witnesses stated that the police always allowed them to remain on the property, that trash cans were provided and that they believed the property to have been open to the public. It is also undisputed that the cable was not erected in an open area adjacent to a public street and was neither marked nor warned against.

Upon consideration of the entire record of proceedings that was before the trial court, and the law as set forth above, this court finds that a genuine issue of material fact exists whether appellee acted wantonly by failing to exercise any care whatsoever to warn known trespassers by stringing and/or maintaining the unmarked cable in such a manner that there was a great probability that harm would result. *Preston, supra.*

Accordingly, appellant's first assignment of error and the first part of his third assignment of error are well taken.

## II. LICENSEE—ACQUIESCENCE

In his second assignment of error, appellant contends that there is a genuine issue of material fact whether his status on September 20, 1987 was

that of a licensee. In support, he argues that appellee acquiesced in having its property used by recreational enthusiasts. In the second part of his third assignment of error, appellant contends that reasonable minds could reach different conclusions whether appellee acquiesced in the public use of its premises.

Appellee responds that its knowledge that trespassers "sometimes" enter onto its property does not constitute acquiescence.

It is well recognized that acquiescence by a landowner in the public use of his premises can amount to a permission or license, thereby elevating the entrant's status from that of trespasser to licensee and that continued tolerance of the presence of trespassers can amount to acquiescence. *Wills v. Frank Hoover Supply* (1986), 26 Ohio St.3d 186, 190, 26 OBR 160, 163–164, 497 N.E.2d 1118, 1121–1122, fn. 1; 62 American Jurisprudence 2d (1990) 466–467, Premises Liability, Section 109; Annotation, 44 A.L.R.3d, *supra*, at 373, Section 5[a]; 5 Harper & James, The Law of Torts, *supra*, at 197, Section 27.7.

In this case it is undisputed that appellee knew that "trespassers" made significant use of its property. It is disputed, however, that their presence and/or the use of the property was permitted or tolerated. Hauser stated that he hired a caretaker and instructed the police to remove trespassers, and that the caretaker erected signs and a cable. Appellant's witnesses state that they used the property often and widely as far back as 1946, were never instructed to leave even though the police were present, that trash cans were provided, that they never saw a "no trespassing" sign, and that they believed the property to have been open to the public. Clearly, therefore, a genuine issue of material fact exists as to appellee's acquiescence.

Accordingly, appellant's second assignment of error and the second part of his third assignment of error are well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the summary judgment granted by the Erie County Court of Common Pleas in favor of appellee is reversed. This case is remanded to said court for further proceedings not inconsistent with this opinion. Costs assessed against appellee.

*Judgment reversed*
*and cause remanded.*

GLASSER, P.J., and HANDWORK, J., concur.