MOTORISTS MUTUAL INSURANCE CO. ET AL., APPELLEES, *v.* BILL ET AL., APPELLANTS.

(No. 78-381—Decided December 7, 1978.)

260

*Weltman, Strachan & Green. Co., L. P. A.,* and *Mr. Robert J. Olender,* for appellees.

*Ms. Sheila Tew,* for appellants.

HOLMES, J. The first basic issue presented by this appeal is whether the acts of the minor under the facts of this cause, where the minor being pursued by the police and driving an automobile at a high rate of speed, ran through stop signs and collided with and damaged the plaintiff's parked automobile, constitute, under the intent of R. C. 3109.09, "willfully" damaging the property of the plaintiff.

The second basic issue presented by this appeal is whether an action for any such willful damage to property, if so found, may under this statute be brought against

the parents of the minor by the owner's subrogated insurance company.

## I.

This cause presents the initial opportunity for this court to construe certain aspects of R. C. 3109.09, which provides for the vicarious liability of parents for the destructive acts of their children.

The wording of the statute at the time applicable to this cause was as follows:

"Any owner of property is entitled to maintain an action to recover compensatory damages in a civil action in an amount not to exceed two thousand dollars and costs of suit in a court of competent jurisdiction from the parents having the custody and control of a minor under the age of eighteen years, who willfully damages property belonging to such owner. A finding of willful destruction of property is not dependent upon a prior finding of delinquency of such minor.

"Such action shall be commenced and heard as in other civil actions for damages."

Under the common law, parents were not held liable in damages for the torts of their minor children solely because of the parent-child relationship. Generally, the only recovery was where the parent participated in the tort, or where there was some relationship established, such as principal and agent, or master and servant. However, there were instances of allowing vicarious recovery from the parent when the parent knew of the malicious, reckless, or mischievous propensities of his minor child and failed reasonably to control it. 59 American Jurisprudence 2d 231, 234, Parent and Child, Sections 130, 133; Annotation, 8 A. L. R. 3d 612, 614.

Over the years, many states, including Ohio, have enacted statutes in derogation of the common law which have imposed upon parents legal responsibility for the consequences of the tortious acts of their children which resulted in damage to others.

Ohio originally enacted such a parental responsibility

law, R. C. 3109.09, in 1965 by the passage of Am. Sub. H. B. No. 159 (131 Ohio Laws 689). The maximum of the parental liability under the Act was $250. The statute was amended in 1967 to increase the limit of liability to $800, and, in 1969, the statute was amended to increase the liability to $2,000. The 1969 amendment also substituted the word "compensatory" for the word "actual" in describing the nature of the damages which could be recovered. The statute was once again amended, effective May 23, 1978 (Am. H. B. No. 456), raising the liability to $3,000, added "theft" as a compensable act, and removed the parents of married minors from responsibility under the Act.

Although there is no official legislative history giving more definitive insight into the legislative intent in the passage of R. C. 3109.09, some light may be shed upon its purposes by the following comments in Laven, Liability of Parents for the Willful Torts of Their Children Under Ohio Revised Code Section 3109.09, 24 Cleve. State L. Rev. 1, 2, at footnote 2:

"Unfortunately, there is no legislative history available which might reveal the legislature's purpose in enacting Section 3109.09 of the Ohio Revised Code * * *. The purposes expressed in enacting similar parental liability statutes in other states have been to curb juvenile delinquency by making parents more responsibile with respect to the behavior of their children; to compensate the injured property owner; or to both curb delinquency and provide a means of compensation. * * *"

In this same regard, the following comment on the general legislative basis or intent in the passage of these types of statutes is to be found in Annotation, 8 A. L. R. 3d 614, at section 1[a]:

"* * * [These statutes were] [p]resumptively enacted for the purposes of attempting to restrain juvenile delinquency, vandalism, and malicious mischief, these statutes, though revealing some variation in language and effect, were substantially similar in their tenor and effect. * * *

"In most, though not all, jurisdictions the maximum amount of the recovery from the offending minor's parents was limited, irrespective of the extent of the actual damage, to a rather nominal sum which ranged generally from $250 to $500. It would seem a not unreasonable inference from this limitation that it was the the legislative intent in passing these statutes to impose a penalty upon the parents of a destructive child, rather than to compensate the injured party."

While the language of the current version of this Ohio parental responsibility statute refers to "compensatory damages" as that which may be recoverable by an owner, the limitation of the monetary amounts, at least as initially enacted, would not reasonably suggest that the sole purpose of the enactment was to compensate the owner for his losses. It is reasonable to assume that the General Assembly had a companion purpose for the passage of such legislation, and that could be the thought and desire of making parents more responsible for the behavior of their minor children, and to impose a form of penalty upon the parents of a destructive child. Whether the enactment of this section of law has effected any such noble purpose of combating juvenile delinquency may be questionable, but that does not lessen the probability that this was indeed one of the legislative purposes of the bill.

Statutes of this general nature have been construed in a number of manners by the courts of other jurisdictions. In the main, the variations in the holdings have been based upon the particular language of the statute involved. However, we believe it to be the general view that these laws having been enacted in derogation of the common law, and having not been enacted primarily as a remedial measure, but equally as a form of penalty, courts should construe the liability to be imposed upon the parent in a strict, rather than a liberal, manner. See Annotation, 8 A. L. R. 3d 616, Section 3.

In this cause, the trial court, in dismissing the action against the parents of Michael Bill, stated: "This court believes the car was struck when the minors were trying

to elude the policeman. We do not believe that was intentional and wilful. We believe it was done out of fright while they were trying to get away from the policeman. He had no intention of striking the car.''

The majority of the Court of Appeals reversed the trial court for two reasons: (1) that the trial court had erred ''in its judgment that both intenion and willfulness were necessary to justify the impositions of liability here''; and (2) that the trial court had erred in interpreting the statute as requiring both the initial act of the minor producing the damage, as well as the damage inflicted, to be intentional.

The Court of Appeals in its determination noted that there were varying views of other jurisdictions on the interpretation of this type of statute, and proceeded to cite and follow the holding in the case of *Potomac Ins. Co.* v. *Torres* (1965), 75 N. M. 129, 401 P. 2d 308. The Court of Appeals also cited and declined to follow the holding of *Groton* v. *Medbery* (1972), 6 Conn. Cir. 671, 301 A. 2d 270.

The statute in the state of New Mexico which was being construed by the court in *Potomac* permitted recovery from parents of minors ''who shall maliciously or wilfully damage or destroy property * * *.'' The court in *Potomac* stated at pages 131-132, that when that statute ''characterizes an act as being done 'willfully' or 'maliciously,' it denotes the intentional doing of a harmful act without just cause or excuse or an intentional act done in utter disregard for the consequences.''

The court in *Potomac* determined that the act of a minor under 18 years of age who had stolen an automobile, and while being chased by the police had driven down a crowded business street in excess of 60 m. p. h. and hit an automobile stopped at a traffic light, constituted intentional act done without just cause or excuse and in utter disregard for the consequences. The court concluded that property damaged under such circumstances could be considered to have been willfully damaged.

The conclusion of the court in *Potomac,* in essence,

relied upon the basic theory of constructive or implied intent as to the consequences of an act based upon a finding that the initial act had been done with a reckless disregard of the probable consequences. Such a theory or application in Ohio case law has generally been applied where the terms "willful misconduct" or "wanton misconduct" are being discussed. This was the interpretation of this court of such language in Ohio's former guest statute in *Tighe* v. *Diamond* (1948), 149 Ohio St. 520, and *Bailey* v. *Brown* (1973), 34 Ohio St. 2d 62.

The interpretation of the words "willfully damages" as used within R. C. 3109.09, which statute imputes liability to parents for the willful acts of their minor children, should not be dependent upon, or guided by, the interpretation of the language of the prior guest statute of this state.

It is our view that the term "willfully," as used within R. C. 3109.09 should be equated with the word "intentionally," and contrary to the holding of the Court of Appeals in this regard, the trial court did not add another element to the statute. We hold, and appellees concede here, that the words "willful" and "intentional" are, at least for the purposes of this statute, synonymous.

We believe that the language of this section contemplates a willful tort, rather than an act of the minor which could be viewed as wanton. The former involves intent or purposes; the latter involves a degree of negligence. Accordingly, it was stated within the opinion of Justice Bevis in *Reserve Trucking Co.* v. *Fairchild* (1934), 128 Ohio St. 519, 530: "This court has rather clearly distinguished between 'wilful tort' and 'wanton negligence.' " In *Payne* v. *Vance* (1921), 103 Ohio St. 59, the first paragraph of the syllabus reads: "Willful tort involves the element of intent or purpose and is therefore distinguished from negligence whatever may be its grade, whether slight, ordinary or gross."

In *Payne*, at page 68, Chief Justice Marshall stated: "Wilfulness implies design, set purpose, intention, deliber-

ation. Strictly speaking, wilful negligence is not negligence at all. Wherever an exercise of the will is exerted there must be an end of inadvertence * * *.''

Adopting the views as set forth within *Reserve Trucking, supra,* we hold that within the purview of R. C. 3109.-09, "willfully damages property" means the intentional doing of the act which occasions the damage and resulting loss, coupled with the intent or purpose of causing the damage. Under this section, in order that parents may be found liable for the acts of their minor children, both the initial act, as well as the subsequent damage, must be found to be intentional. We conclude that this dual finding is necessary under this statute, in that the intentional doing of an act does not necessarily make the unintentional damage it produces, willful or intentional.

Under the facts of this cause, the minor, Michael Bill, did intend to drive the automobile down the particular street involved, but even though he was driving in a wanton and reckless manner, and certainly driving without due regard for the property of others, we must hold that for the purposes of this statute, he did not intend to, or willfully, damage the automobile of the plaintiff.

This interpretation may, under this, or other factual situations evidencing a gross absence of consideration for others, seem to be too restrictive. However, if it be the legislative desire to further broaden the liability of parents in derogation of the common law, it would be a simple matter to enact language to accomplish such aim. We do not believe it to be our prerogative to do so.

Based upon the foregoing, we must reverse the Court of Appeals concerning the interpretation of the language "willfully damages" contained within R. C. 3109.09, and as it relates to the liability of the minor's parents herein.

## II.

As to the second basic issue involved herein, we hold that a subrogated insurer may, pursuant to R. C. 3109.09, maintain an action against the parents in custody and control of a minor who willfully damages property of an

owner. We hold that although a subrogated insurer is not technically an "owner" of property as the word is set forth within this statute, the general law applicable to subrogation should be followed in this type of case. Such law is set forth in 30 Ohio Jurisprudence 2d 813, Insurance, Section 887, as follows:

"The well-settled general rule is that if insured property is destroyed or damaged through the fault or neglect of another than the insured, the insurer, upon payment of the loss, will be subrogated to the rights of the insured owner to recover from the wrongdoer to the extent that the insurance company has been obligated to pay, and has paid, and that the rights of the insurance company under such circumstances are precisely those of the insured against the wrongdoer. * * *"

There is no cogent reason why the doctrine of subrogation should not be applied in the instance of a foresighted insured who has provided insurance coverage for his own damages. Such foresightedness of the one initially damaged should not provide an escape hatch for parents who would have otherwise been held accountable to the owner for the damaging acts of their minor children. We hold that the subrogated insurance carrier should "stand in the shoes" of the compensated owner, in that the subrogated insurance company is now a real party in interest. Such was the determination of a North Carolina court in the case of *General Ins. Co. of America* v. *Faulkner* (1963), 259 N. C. 317, 130 S. E. 2d 645. Recognizing that the case dealt with a statute stating "[a]ny person" may bring the action, we hold that such determination should equally be applicable in Ohio even though our statute only specifically refers to "[a]ny owner."

Appellants argue that "[s]ince the statute is compensatory rather than punitive," the primary legislative intent of compensating the victim is served without a judicial expansion of the statute to cover subrogees. Initially, as discussed earlier, we deem the statute to be founded both upon the idea of compensation for the owners, and hopefully

to make the parents more aware of the necessity to keep the acts of vandalism of their minor children under greater parental control and penalize the parents where they have not done so. Additionally, this argument of the appellants, if adopted, would effectively result in the parent of the tortious minor receiving insurance coverage for which he had paid no premiums. Such point, among others in support of allowing a claim by a subrogee under R. C. 3109.09, was made by Judge George in *Liberty Mutual* v. *Davis* (1977), 52 Ohio Misc. 26, the only reported Ohio case discussing this issue.

In any event, we hold that to deny the insurer the right to bring an action as a subrogee against a parent under R. C. 3109.09, where the insured owner has been compensated under the insurance policy, would be a most inequitable determination. Therefore, we hold that the Court of Appeals for Cuyahoga County was correct in its analysis of this issue.

Based on the foregoing, the judgment of the Court of Appeals reversing the dismissal of the action against the minor's parents herein is hereby reversed.

*Judgment reversed.*

LEACH, C. J., HERBERT, P. BROWN and LOCHER, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

HOLMES, J., of the Tenth Appellate District, sitting for SWEENEY, J.