AEROSOL SYSTEMS, INC. et al., Appellant and Cross–Appellee,

v.

WELLS FARGO ALARM SERVICES, Appellee and Cross–Appellant.

[Cite as *Aerosol Sys., Inc. v. Wells Fargo Alarm Serv.* (1998), 127 Ohio App.3d 486.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 71216.

Decided May 4, 1998.

488

---

*Janik & Dunn, Steven G. Janik* and *Christian M. Williams,* for appellant and cross-appellee.

*Porter, Wright, Morris & Arthur, David C. Tryon* and *David A. Bell,* for appellee and cross-appellant.

JAMES D. SWEENEY, Judge.

Plaintiff-appellant and cross-appellee Aerosol System, Inc. ("Aerosol") appeals from a jury verdict in favor of defendant-appellee and cross-appellant Wells Fargo Alarm Services, Inc. ("Wells Fargo"). The appellant, who contracted with the appellee for the provision of fire alarm services, filed suit seeking recovery from losses suffered after a fire at its facility in Macedonia, Ohio. Since the record and the transcript for this case are voluminous, only the essential facts are set forth herein, and, where necessary, additional facts are given in the individual assignments of error.

On December 13, 1992, the appellee received a fire alarm signal from Aerosol's Macedonia facility. As permitted under the provisions of the contract, Wells Fargo first contacted a designated employee of Aerosol and subsequently notified the Macedonia Fire Department. The fire ultimately caused approximately $15,700,000 in property damages. The appellant contended that the appellee should have investigated trouble signals received in the days and hours prior to the fire alarm signal and that the fire itself originated from within the electrical panel controlling the Wells Fargo alarm system. The appellee argued that the origin of the fire was not within the electrical panel and that the decisions regarding the trouble signals were not improper.

Prior to the fire, Wells Fargo received numerous trouble signals from its fire alarm system at the appellant's plant. By design, the alarm system has an internal monitoring system. This system issues a trouble signal to report possible maintenance problems. A trouble signal may be sounded for many reasons, including a short circuit along the heat detector wires, a power outage for the factory's electrical line which normally supplies the alarm system's energy, low power for the backup battery, or telephone line problems. These maintenance signals are transmitted to Wells Fargo's central operating station, where the operators must respond in some manner. A trouble signal cannot impair the system's ability to detect fires or to transmit an actual fire alarm signal.

The central operating system has two computers, the central multiple processor ("CMP") and the operations information system ("OIS"). Upon receipt of a trouble signal, the CMP emits a high-pitched noise and activates a warning light; the OIS beeps. The operator must press the acknowledgment button on the CMP and key in a response on the OIS. The trouble signal will either lock in, indicating that the condition causing the trouble signal must be corrected, or will automatically reset, meaning the condition causing the trouble signal has ceased.

On December 10, 1992, Wells Fargo received five trouble signals from the Aerosol facility in Macedonia. Although sixty-one more signals were received between December 12, 1992 and December 13, 1992, there were no signals received in the six hours before the fire signal was received. Each of these maintenance signals received at the central operating station automatically reset.

On the afternoon of December 12, 1992, the operator prepared a service order for a service technician to investigate the Aerosol trouble signals. The investigation had not begun before the fire alarm signal sounded. In addition, at approximately 3:00 p.m., an Aerosol employee telephoned Wells Fargo, requesting reactivation of the Halon gas detection system. During this conversation, the employee asked whether everything was in order. The operator responded that everything was okay.

Yvonne Musgrave, an employee of Wells Fargo, testified that she was assigned as a central station operator from 7:00 a.m. to 3:00 p.m. on December 12, 1992. She also stated that Wells Fargo has both service training manuals and newer policy and procedure modules available for employees to review. Appellant's counsel cross-examined Musgrave closely regarding the instructions given in both the manual and in the modules as to the response required when a trouble signal is received.

Edward Schaefer, an electrical engineer who investigates the causes and origins of electrical fires, testified for the appellant. On cross-examination, he stated that Robert Taylor and Kenneth Wolf were hired by Home Insurance to investigate the fire. Schaefer conversed with both Taylor and Wolf regarding their investigation. Taylor and Wolf physically removed objects from the Aerosol factory. It became evident during Schaefer's cross-examination that Taylor and Wolf had removed objects from the facility immediately after the fire and that later investigators did not have access to those objects.

Donald Dragony, the chief financial officer for the Alex Sill Company, a licensed public insurance adjusting firm, testified on behalf of the appellant. He stated that the Alex Sill Company was reimbursed for their work on behalf of Aerosol on a contingency basis. On cross-examination, Dragony testified that the company was acting as an advocate for Aerosol in its claim against Home Insurance. The amount the firm was paid was tied to the amount they could persuade Home Insurance to pay Aerosol. The Alex Sill Company received a fee of approximately $785,000 for its work. In addition, the company was hired, for a separate fee, by Home Insurance to assist in the lawsuit.

Larry Sheldon of the Alex Sill Company testified that under Aerosol's policy with Home Insurance, Aerosol was limited to the replacement costs for like kind and quality or the closest available thereto. If Aerosol chose not to replace a piece of equipment, its recovery would be limited to the actual cash value of that

equipment. If Aerosol replaced equipment with a better and more costly machine, Aerosol could recover the replacement cost of the equipment comparable to what was lost. It was Sheldon's opinion that Aerosol did not attempt to recover for the cost of new, more expensive equipment.

The jury was given the following interrogatory: "Did Aerosol prove by a preponderance of the evidence that the conduct of any Wells Fargo employee or employees relating to Aerosol was wanton misconduct?" The jury unanimously responded in the negative and unanimously entered judgment for the appellee.

The appellant sets forth five assignments of error. The first three assignments of error will be considered together.

The appellant's first, second, and third assignments of error state:

"The court of common pleas erred by failing to instruct the jury that Aerosol could recover in wanton misconduct for Wells Fargo's recklessness.

"The court of common pleas erred by failing to instruct the jury that Aerosol was not required to prove that Wells Fargo acted with intent to injure in order to recover for Wells Fargo's wanton misconduct.

"The court of common pleas erred by failing to instruct the jury that Aerosol could recover in tort for Wells Fargo's wanton misconduct irrespective of Wells Fargo's compliance with its contract with Aerosol."

In each of these assignments of error, the appellant argues that the trial court improperly instructed the jury on the issue of wanton misconduct. In the first assignment of error, the appellant contends that the court improperly used the charge for wanton misconduct as given in the 1 Ohio Jury Instructions (1996) 140, Section 7.90. The appellant asserts that the court should have given an instruction that comports with the definition of "recklessness" given in 2 Restatement of the Law 2d, Torts (1965), Section 500.

The trial court gave the following instruction on the issue of wanton misconduct.[1] This instruction mirrors the wanton misconduct instruction in 1 Ohio Jury Instructions (1996) 140, Section 7.90:

"Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury. Wanton misconduct implies a failure to use any care for the plaintiff and an indifference to the consequences, when the probability

---

1. The same instruction was given, without objection, during voir dire. However, appellant timely objected prior to the jury's retiring to deliberate as required by Civ.R. 51.

that harm would result from such failure is great, and such probability is known, or ought to have been known, to the defendant."

The following instruction was requested by the appellant and rejected by the trial court:

"Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury. Wanton misconduct implies a failure to use any care whatsoever towards those to whom a duty of care is owed and a reckless indifference to the consequences, when the probability that harm would result from such failure is great, and such probability is known, or ought to have been known, to the defendant."

On appeal, the appellant argues that, rather than its proposed jury instruction on wanton misconduct, the court should have given an instruction which defines "wanton misconduct" in terms of recklessness as defined in 2 Restatement of the Law 2d, Torts, Section 500. In its proposed jury instruction 20, the appellant requested that the jury be instructed that "Wells Fargo showed reckless indifference to the consequences of failing to act, and therefore is liable for its wanton misconduct." The appellant argues that this request was sufficient to place before the court the issue of defining wanton misconduct as recklessness. The appellant also argues, seemingly in the alternative, that if proposed jury instruction 20 was not sufficient to place the issue before the court, then it was plain error for the court to fail to instruct the jury that wanton misconduct is not the failure of any care whatsoever but rather is the reckless disregard for the safety of others.

In the second assignment of error, the appellant argues that the court erred to the prejudice of the appellant in failing to instruct the jury that intent to injure is not an element of wanton misconduct. Likewise, in the third assignment of error, the appellant argues that it was prejudiced by the court's failure to instruct the jury on the distinction between tort and contract; specifically, the court should have instructed the jury that the appellee might be liable in tort even though it complied with all provisions of the contract.

It is within the sound discretion of a trial court to refuse to admit proposed jury instructions which are either redundant or immaterial to the case. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 524 N.E.2d 881, paragraph two of the syllabus. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 121, 573 N.E.2d 622, 623–624, quoting *Huffman v. Hair*

*Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 123–124, 482 N.E.2d 1248, 1251–1252.

In examining errors in a jury instruction, a reviewing court must consider the jury charge as a whole and must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. ·*Kokitka v. Ford Motor Co.* (1995), 73 Ohio St.3d 89, 93, 652 N.E.2d 671, 674–675, citing *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165, 170–171.

In the case *sub judice*, the court based its instruction on the holding in *Hawkins v. Ivy* (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, where the court refused to define "wanton conduct" as a "disposition to perversity" and instead determined that wanton misconduct occurs where the conduct is a failure to exercise any care whatsoever toward those to whom a duty of care is owed, and the failure occurs under circumstances in which there is great probability that harm will result.

The appellant's argument that the definition of wanton misconduct given in *Hawkins* has been superseded by *Thompson v. McNeill* (1990), 53 Ohio St.3d 102, 559 N.E.2d 705, is unpersuasive. The appellant contends that the Ohio Supreme Court has replaced the definition of wanton conduct given in *Hawkins* with the definition of recklessness as given in the Restatement of the Law 2d, Torts. The court in *Thompson,* addressing itself to the limited question of injuries occurring within the context of sporting events, noted that the Restatement of the Law 2d, Torts, supports the view that different standards of care should apply to those who inflict injuries in the course of a game as opposed to those who inflict injuries under ordinary circumstances.

While this court must acknowledge that in a footnote the *Thompson* court stated that the term "reckless" is often used interchangeably with "willful" and "wanton," we must also acknowledge that the Ohio Supreme Court, in *Gladon v. Greater Cleveland Regional Transit Auth.* (1996), 75 Ohio St.3d 312, 319, 662 N.E.2d 287, 294, cited *Hawkins, supra,* for the definition of "wanton conduct."[2] Thus, this court finds that the trial court did not abuse its discretion in relying on the definition of wanton misconduct as given in both *Hawkins* and *Gladon.*

Since the trial court did not err in instructing the jury on the issue of wanton misconduct, it could not have been plain error to refuse to charge the jury either as the appellant requested at trial in its proposed wanton misconduct charge, or as implied in its requested instruction 20.

---

**2.** While the Supreme Court issued a plurality opinion in *Gladon,* there was no discussion in the concurring or dissenting opinions as to the definition of "wanton."

■ Having found that the court properly instructed the jury as to the definition of "wanton misconduct," this court is unwilling to find that the trial court erred in failing to instruct the jury as to what does not constitute wanton misconduct, *i.e.,* that intent to injure is not an element or that wanton misconduct does not require a breach of contract. Where, as here, the court properly instructed the jury as to the definition of "wanton misconduct," there is no error in refusing to enter into a potentially limitless series of instructions that are not relevant. *Bostic, supra.*

The appellant's first, second, and third assignments of error are overruled.

The fourth assignment of error states:

"The court of common pleas abused its discretion by excluding Wells Fargo's training manual, which evidenced Wells Fargo's duties to Aerosol and Wells Fargo's reckless and wanton breach of such duties."

The appellant asserts that the trial court erred when it excluded from evidence the appellee's training manual. While there was testimony that the manual was outdated, testimony also revealed that the manual was physically in Wells Fargo's central station and available for reference by employees.

In *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, 1058, the Supreme Court reaffirmed the longstanding test for appellate review of admission of evidence:

"Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. *E.g., State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. *E.g., Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142."

Since the trial court has such broad discretion, the appellate court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *Cleveland v. Petko* (1996), 112 Ohio App.3d 670, 676, 679 N.E.2d 1162, 1166, quoting *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505, 511, 625 N.E.2d 626, 629–630. The trial court must determine whether the probative value of certain evidence and/or testimony is substantially

outweighed by the danger of unfair prejudice or of confusing or misleading the jury. *Id.*

■ The trial court here permitted the appellant to read significant portions of the manual into evidence, witnesses were cross-examined regarding the manual, and selected portions of the manual were admitted into evidence. In addition, it may well be that the court was attempting to limit the sheer volume of documentary evidence placed before the jury. Under the circumstances present in this case, the refusal to admit the entire manual was a decision clearly within the trial court's discretion.

The appellant's fourth assignment of error is overruled.

The appellant's fifth assignment of error states:

"The court of common pleas abused its discretion by admitting evidence of Aerosol's insurance with Home and evidence of Home's alleged spoliation of evidence."

The appellant argues that the visiting trial judge erred in admitting evidence regarding the appellant's insurance in violation of a pretrial ruling on a motion *in limine.* The appellant contends that evidence of compensation from a collateral source is not admissible and that its admission in this case was so prejudicial as to require a new trial.

During direct examination of the first witness, the appellant questioned Edwin Roth, the chairman and chief executive officer of Aerosol, regarding the impact the business sustained as a result of the fire. Roth testified that because of the fire, Aerosol spent its money and was not in a position to complete its expansion program. The appellant objected, and a sidebar was conducted. No record was made of the sidebar conversation or the court's ruling on the objection. On cross-examination, the appellant elicited testimony that while the appellant's funds were initially used to rebuild the Aerosol facility, the company was insured at the time of the fire, and that the appellant was reimbursed by insurance proceeds. The appellant's objections were overruled by the trial judge. Subsequently, the testimony of various witnesses referred to the fact that the appellant was insured at the time of the fire loss.

The trial judge gave the following instruction to the jury regarding insurance:

"During the course of this trial you've heard references to insurance and insurance proceeds. Aerosol had what is referred to as a business interruption insurance and extra expense insurance coverage designed to compensate aerosol for any losses it sustained during the period reasonably necessary to restore the facility.

"Aerosol's property insurer paid aerosol $15.7 million for property damage, extra expenses incurred during the period of restoration and for lost business due to the fire.

"Aerosol maintains further that it sustained certain losses for which it has not been compensated. Aerosol claims that the insurance proceeds did not cover the long-term effect that the fire had on its business, which arose after the facility was fully up and running.

"You are not to speculate as to any financial arrangements between Aerosol and its insurance company as to how any sums recovered will be divided. Such arrangements have no bearing on your assessment of the damages sustained by Aerosol in this case. Under the law of the State of Ohio, a third party wrong-doer may not benefit from the fact an injured party procured insurance to cover itself against a future loss of risk. There should be no reduction in damages based upon the fact that Aerosol received compensation from its insurances for losses resulting from the fire.

"If, based on a preponderance of the evidence, Aerosol has proven to you it has suffered damages over and above the amount it received from its insurance company, you may award such sums. In determining the amount of damages sustained by Aerosol, you're not required, nor should you automatically reduce such recovery by the amount of the insurance payment if the evidence presented supports that contrary result.

"You are to determine based upon a preponderance of the evidence the total amount of loss sustained by Aerosol as a result of the fire and allegedly caused by wanton misconduct of Wells Fargo.

"The fact that an insurance company has paid Aerosol a certain amount does not mean that Aerosol's recovery in this case is or should be limited to such amount."

It is well established that the jury is presumed to follow the instructions of law given them by the trial court. *Stokes v. Meimaris* (1996), 111 Ohio App.3d 176, 675 N.E.2d 1289, citing *Bell v. Mt. Sinai Med. Ctr.* (1994), 95 Ohio App.3d 590, 643 N.E.2d 151.

■ While not specified in the Civil Rules, a motion *in limine* requests a ruling limiting the introduction of evidence during trial. The Ohio Supreme Court has held that the effect of granting a motion *in limine* is to temporarily prohibit any reference to the evidence which is the subject of the motion. *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142. It is incumbent upon the party temporarily restricted from introducing the evidence to seek introduction by proffer or otherwise in order to enable the court to make a final determination as to admissibility and to preserve the record for purposes of appeal. *Id.* Since

the order is interlocutory, a visiting trial judge may reverse the granting of a motion *in limine* by the assigned judge. *Webster v. Oglebay Norton Co.* (Jan. 25, 1995), Cuyahoga App. No. 65502, unreported, 1995 WL 32628.

As indicated in the fourth assignment of error, an appellate court that reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *Rigby, supra.* This court must be slow to interfere unless the court has clearly abused its discretion, since the trial court is in the best position to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. *Petko, supra.*

■ While the judge to whom the case was assigned granted the appellant's motion *in limine* regarding evidence of insurance, the trial judge hearing the case permitted the evidence. Even though there is no specific statement contained in the transcript indicating that the original ruling on the motion was reversed, the reversal is evident, given testimony that was admitted. The trial court was within its discretion to rule on the motion at trial. *Webster, supra.*

■ The next question is whether the trial judge entered the proper ruling. In *Pryor v. Webber* (1970), 23 Ohio St.2d 104, 52 O.O.2d 395, 263 N.E.2d 235, paragraph two of the syllabus, the Supreme Court held that the collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tortfeasor must pay for his negligent act. The court, while not directly addressing the issue, did not find the short cautionary instruction given to the jury at the time the evidence was admitted to be sufficient to avoid prejudice to the plaintiff.

More recently, in *Ede v. Atrium S. OB–GYN, Inc.* (1994), 71 Ohio St.3d 124, 642 N.E.2d 365, the court confronted the issue of permitting evidence regarding insurance to be placed before a jury. The court found it permissible in a medical malpractice action to question an expert witness regarding the fact that his insurance carrier was the same as that of the defendant. The court found the evidence of bias to be probative and to outweigh any potential prejudice that evidence of insurance might cause.

The court stated that too often courts have a Pavlovian response to insurance testimony—immediately assuming prejudice—and that it is naive to believe that today's jurors do not already assume in a malpractice case that the defendant doctor is covered by insurance. *Id.* at 127, 642 N.E.2d at 368. The legal charade protecting juries from information they already know keeps hidden from them relevant information that could assist them in making their determinations. *Id.* Although this court is fully cognizant that the *Ede* court was not considering a

question regarding a collateral source, the comments of the court regarding the knowledge base of today's jurors are equally applicable.

In the case *sub judice,* the trial court was faced with a complex set of facts. The appellant purchased insurance and utilized the proceeds to rebuild a facility with modern equipment. The Alex Sill Company, hired by the appellant to value the fire damage, appraised the replacement cost and actual cash value of the machinery, furniture, fixtures, and stock inventory. The adjusters determine whether the equipment was repairable or a total loss and then gather information from manufacturers and suppliers. The question of witness bias is evident, particularly where the public adjusters received compensation on a contingency basis.

In addition, the fire investigators hired by the insurance company failed to ensure that vital evidence was preserved. These issues were proper topics for cross-examination, and the evidence admitted provided the jury with information relevant in reaching their determination. Given the facts in this particular case, it would have been extremely difficult to stave off the jury from knowing that the appellant had protected itself with insurance.

However, even given these complex facts, the admission of the evidence regarding insurance might be questionable, absent the strong language of the jury instruction given by the court. The trial court, who was best able to evaluate the danger of confusing or misleading the jury, chose to admit the evidence as background information and then instruct the jury not to consider the insurance benefits when making its determination. The court's instruction to the jury was both detailed and complete, and designed to prevent any prejudice from accruing to the appellant.

The jury is presumed to have followed the trial court's instruction. *Stokes, supra.* Based upon the complexity of this litigation and the totality of the circumstances, this court concludes that the trial court's admission of evidence on insurance was not an abuse of discretion.

Last, the appellant argues that the trial court erred in permitting the appellee to question witnesses regarding the spoliation of evidence by the insurance company fire investigators. While it is clear that both the assigned judge and the trial court prohibited the appellant's experts from using as a basis for expert testimony any evidence that was not available to the appellee, these rulings did not prohibit the appellee from arguing that because evidence was destroyed, the cause of the fire could not be factually determined. The trial court did not abuse its discretion in permitting such evidence.

The appellant's fifth assignment of error is overruled.

The appellee's assert two cross-assignments of error.

The first cross-assignment of error states:

"The trial court erroneously denied Wells Fargo's motions for directed verdict at the close of the plaintiff's case, and at the close of all the evidence."

Because each of the appellant's assignments of error have been overruled, this cross-assignment of error is overruled as moot. See *Weston v. Weston Paper & Mfg. Co.* (1996), 74 Ohio St.3d 377, 380, 658 N.E.2d 1058, 1061.

The appellee and cross-appellant's second cross-assignment of error states:

"The trial court erroneously dismissed Wells Fargo's counterclaim for contractual indemnity, for its expenses in defending against Home's claims in its own name and in the names of Aerosol and SCR."

The appellee and cross-appellant asserts that pursuant to paragraph 12 of the contract, it is entitled to recover from the appellant and cross-appellee its expenses, costs, and attorney fees, incurred defending the claim of Home Insurance. The appellee and cross-appellant asserts that because Home Insurance is not a signer of the contract, the appellant and cross-appellee is required to indemnify, defend, and hold it harmless from any claim asserted by Home.

The appellant and cross-appellee argues that Home Insurance has no independent claims against Wells Fargo, but, rather, is involved in this action only derivatively, as Aerosol's insurer. Since Home Insurance has merely stepped into the shoes of its insured, the appellant and cross-appellee is not liable for the appellee and cross-appellant's expenses, costs and attorney fees.

Paragraph 12 of the contract states:

"In the event any person not a party to this agreement shall make any claim or file any lawsuit against Wells Fargo Alarm for failure of its equipment or service in any respect, whether or not caused by the negligence, active or passive, of Wells Fargo Alarm, then the subscriber agrees to indemnify, defend and hold harmless Wells Fargo Alarm from any and all such claims and lawsuits including the payment of all damages, expenses, costs and attorneys' fees."

The Supreme Court defined subrogation in *Bogan v. Progressive Cas. Ins. Co.* (1988), 36 Ohio St.3d 22, 521 N.E.2d 447,[3] where it held:

"The legal doctrine of subrogation has long been recognized as an insurer's derivative right. In the case of *Newcomb v. Cincinnati Ins. Co.* (1872), 22 Ohio St. 382, subrogation was defined as follows:

---

3. *Bogan* was modified and explained in *McDonald v. Republic–Franklin Ins. Co.* (1989) 45 Ohio St.3d 27, 543 N.E.2d 456, but only with respect to the definition of "consent" by an insurance company to a settlement.

" 'Where a loss, covered by insurance, is occasioned by a wrong-doer, the underwriter, after reimbursing it in specie, or making compensation in money, is, in a proper case, entitled to be subrogated, *quoad hoc,* to the right of the assured against the wrong-doer. This is of the highest equity; for whereas the loss is, in the first instance, that of the insured, after reimbursement or compensation, it becomes the loss of the insurer.' *Id.* at 387, relying upon the opinion of Lord Hardwick in *Randal v. Cockran* (1748), 1 Ves. Sen. 98, 27 Eng.Rep. 916."

The *Bogan* court went on to state that "it is axiomatic to the doctrine of subrogation that the rights of the insurer are no greater than those of the insured." *Id.* at 29–30, 521 N.E.2d at 455. In *State Farm Mut. Auto. Ins. Co. v. Webb* (1990), 54 Ohio St.3d 61, 64, 562 N.E.2d 132, 134–135, the court found that traditional principles of subrogation have long been recognized as an insurer's derivative right. Pursuant to the doctrine of subrogation, the subrogated carrier steps into the shoes of its insured. *Motorists Mut. Ins. Co. v. Bill* (1978), 56 Ohio St.2d 258, 10 O.O.3d 398, 383 N.E.2d 880.

From these cases, it may be concluded that while Home Insurance was not a signer of the contract, it had an equitable right to attempt to recover its losses from Wells Fargo. The law is clear that Home Insurance may assert only claims and defenses open to its insured, no more, no less. This result works no prejudice to the appellee and cross-appellant, who receives the benefit of its contractual agreement with Aerosol: no claims were asserted against it other than those which Aerosol was entitled to assert. Notwithstanding paragraph 12 of the contract, the appellant and cross-appellee's insurance company was entitled to assert its subrogation interest in this litigation.

The appellee and cross-appellant's second assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

BLACKMON, A.J., and O'DONNELL, J., concur.